Filed 6/30/17; pub. order 7/21/17 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D071772 |
| Plaintiff and Respondent, | (Super. Ct. No. J519194A, B) |
| v. | |
| K.C., | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge. Affirmed.

Niti Gupta, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

K.C. (Mother) appeals orders of the juvenile court terminating parental rights to her sons A.C. and E.C. under Welfare and Institutions Code section 366.26 and placing them for adoption. She contends the court erred by concluding it had subject matter jurisdiction over her children's cases under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA, Fam. Code, § 3400 et seq.).[1] The parties agree that Mexico is her children's home state. Although the court sent two e-mails to Mexico courts inquiring whether they declined to exercise jurisdiction over the children's cases in favor of California's assumption of jurisdiction, Mother argues on appeal that the court erred by not verifying and authenticating on the record that those e-mails were sent to the correct e-mail addresses and appropriate judicial authorities in Mexico and that those e-mails were actually received by those authorities. Mother argues that without such verification and authentication, the record does not show that the Mexico courts affirmatively declined to exercise home state jurisdiction of the cases under the UCCJEA based solely on their failure to timely respond to the juvenile court's e-mails. She further argues that, in any event, the court could not exercise subject matter jurisdiction under section 3421, subdivision (a)(2), because there is no evidence showing that the children and at least one parent had significant connections to California other than mere physical presence or that there is substantial evidence available in California concerning the children's care, protection, training, and personal relationships. We affirm the orders.

---

[1]     All further statutory references are to the Family Code unless otherwise specified.

2

FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 2015, Mother, who was born in California, was deported from Mexico to the United States at the San Ysidro Port of Entry. Her two sons, A.C. and E.C., were with her when San Diego Police Department officers responded to a call regarding a female (Mother) who might be unfit to care for her two children. On their arrival, the officers found A.C., then six years old, and E.C., then 15 months old, sitting on the ground with Mother. Mother appeared manic and confused about her detention and expressed irrational beliefs (e.g., she could communicate telepathically). Based on their belief Mother was gravely disabled and unable to care for herself and her two children, the officers detained Mother pursuant to Welfare and Institutions Code section 5150 and transported her to a San Diego County mental health facility for evaluation. Her children were transported to the Polinsky Children's Center (PCC).

On May 26, the San Diego County Health and Human Services Agency (Agency) filed a Welfare and Institutions Code section 300, subdivision (b), juvenile dependency petition for each child, alleging the child was at substantial risk of serious physical harm or illness because of Mother's inability to care for the child. Agency's detention report summarized Mother's extensive criminal history, including an April 16, 2015, arrest in San Luis Obispo, California, for bribing an officer, carrying a concealed firearm in a vehicle, and being a felon or addict in possession of a firearm. Mother did not provide Agency with the identity of her children's father(s).

On May 27, the juvenile court issued orders finding prima facie showings had been made under Welfare and Institutions Code section 300, subdivision (b), detaining

3

the children at PCC or an approved foster home, and setting jurisdiction and disposition hearings for June 16. Although Mother had been released from the mental health facility the previous day and had received notice of the detention hearings, she did not appear at the hearings.

In Agency's report for the jurisdiction and disposition hearings, it reported that Mother stated she and her children lived in Mexico and her children had Mexico citizenship. Mother identified M.C. as the children's father, but stated he was not involved in their lives. A maternal aunt confirmed Mother initially lived in Monterey, California, but relocated to Mexico with M.C. after he was deported there. Mother denied having mental health problems. Although Mother visited her children at PCC on June 5, she did not show up for a scheduled visit three days later or for a scheduled appointment with an Agency social worker. Agency recommended that the court declare the children dependents of the court and order reunification services and supervised visits for Mother.

On June 16, the court held the jurisdiction and disposition hearings. Mother did not appear at the hearings. Agency raised the issue of the court's jurisdiction under the UCCJEA based on Mother's report that she had lived in Mexico for the past nine years and her children had resided in Mexico with her. Agency recommended that the court take temporary emergency jurisdiction under the UCCJEA and then contact Mexico courts to determine whether they were interested in exercising jurisdiction over the case before deciding the question of its subject matter jurisdiction. The court continued the hearings until July 15 and stated it would send an e-mail to Mexico authorities to

4

determine whether they were willing to defer subject matter jurisdiction to it. Agency confirmed the court's understanding that Mother was currently living in Rosarito, Mexico.

Agency thereafter learned that a Mexico birth record showed A.C. was born in Mexico, but no birth record for E.C. was located. Mother stated E.C. was born in Tijuana, Mexico, but his birth apparently was not registered in either Mexico or the United States.

At the July 15 continued hearings, the court stated on the record its attempts to contact Mexico court authorities to ascertain whether Mexico declined to exercise jurisdiction over the cases in favor of California assuming jurisdiction, stating:

> "With respect to UCCJEA, I have handed the lawyers, and I have filed in the court file, my two written attempts to contact the judges that this court is on notice are the presiding judges over dependency and family court matters within Baja California, including the Rosarito County . . . or City within Baja California. I made two contacts. I have made several telephone calls to the numbers that I had with no success in getting through to these two judges, as well as two written e-mail inquiries—one Thursday, July 2nd, the other Monday, July 6th.

> "I did indicate that if I did not hear back from either judge regarding opposition to this court taking subject matter jurisdiction prior to July 14th, 2015, then I would assume that the Country of Mexico is deferring jurisdiction to San Diego County.

> "I have not heard from either judge. We are past the deadline that I asked for a response."[2]

---

[2]     The record on appeal includes copies of the juvenile court's two e-mails and its contact information for the two recipients of its e-mails and telephone calls (i.e., the specific street addresses, telephone numbers, and e-mail addresses of the Baja California and Baja California Sur family court authorities that the juvenile court used in its

The court then found it had complied with the UCCJEA by giving notice to Mexico of the proceedings in these cases and of Mexico's ability to go forward with its own proceedings in its jurisdiction. The court further found that because it had not received any response to its inquiries, it took subject matter jurisdiction over the cases in lieu of the Mexico courts taking jurisdiction and continued the hearings to a future date. Neither Mother nor M.C. appeared at the hearings.

Agency subsequently learned, and reported to the court, that Mother had been arrested on July 23 at the United States/Mexico border and transported to the San Luis Obispo County jail on a felony warrant arising out of the April 2015 charges against her. While in custody, Mother told an Agency social worker that she misses her children and would like them returned to her. Mother was released from custody on September 17.

attempts to contact them). Both the July 2 and July 6 e-mails were addressed to "Lic. Maria Esther Renteria Ibarra and Lic. Daniel Gallo Rodriguez" of the Baja California Family Courts and identified Mother, A.C., E.C., and the children's father by name and date of birth (except for the father). The e-mails stated that the court had unsuccessfully attempted to reach them by telephone. The e-mails then described the events leading up to the children's detention in San Diego and Mother's statement that she and the children had lived in Mexico for the past nine years, most recently in Rosarito, Baja California, Mexico. The e-mails then asked two questions of their recipients: "First, are there any court orders in Rosarito, Baja California regarding the placement of either child with either mother or father? Second, does Mexico decline to exercise jurisdiction over this case in favor of California assuming jurisdiction?" The court then stated: "If there are no custody orders in Rosarito and Mexico is not planning to exercise jurisdiction over these children, then we will proceed with our case in California and make a decision about the appropriate placement of the children." The court informed them it could be reached at the e-mail address shown on its e-mails or at its telephone number (which it provided). The e-mails concluded with the statement: "If I do not hear from you on or before July 14, 2015, I will assume there are no court orders regarding these children in Rosarito and that you are declining to exercise jurisdiction in Mexico."

The children were placed together in a confidential foster home and were doing well. Agency also learned that the children's maternal grandmother lived in Carmel, California. Their paternal grandfather also lived in the United States. He told Agency that he had often provided daily care for A.C. and assisted with taking him to medical appointments.

At the September 22 continued hearings, Mother appeared, was advised of the dependency petitions, and denied their allegations. She was advised of the six-month reunification periods and reunification services available to her. The court set contested jurisdiction and disposition trials for October 29.

At the October 29 trials, Mother did not appear. The court found it had jurisdiction, declared the children dependents of the court, removed them from parental care, placed them in foster care, ordered reunification services for Mother, and set six-month review hearings.

Mother had no contact with Agency from September 22, 2015, through April 6, 2016. Mother was in custody in the San Luis Obispo County jail from April 1, 2016, through April 26, 2016. On April 15, an Agency social worker spoke with Mother who stated she stayed at her Tijuana home from October 2015 through early January 2016, visited her mother in Monterey, California, for three weeks in January, and then returned to her Tijuana home until she was held in a Tijuana jail in March and transferred to the

San Luis Obispo County jail.  On May 12, Mother visited A.C. and E.C. at Agency's office.[3]  Mother was informed of the next court hearings.

At the May 23 contested six-month review hearings, the court terminated Mother's reunification services and set Welfare and Institutions Code section 366.26 hearings to select permanent plans for the children.

On February 14, 2017, after several continuations, the Welfare and Institutions Code section 366.26 hearings were held.[4]  Neither Mother nor M.C. appeared at the hearings.  Agency's report stated the children were adoptable and their current caregiver was willing to adopt them.  Agency recommended that the court terminate the parental rights of Mother and M.C. and select adoption as the children's permanent plans.  The court found the children were likely to be adopted and none of the exceptions to adoption applied, selected adoption as their permanent plans, and terminated the parental rights of Mother and M.C.

Mother timely filed a notice of appeal challenging the court's February 14, 2017 orders.

---

[3]    Her only visit with the children prior to this date was on June 5, 2015, more than 11 months earlier.

[4]    Mother apparently was in custody at a Tijuana penitentiary at least some of the time between the May 23, 2016 and February 14, 2017 hearings.

DISCUSSION

I

*The UCCJEA Generally*

The UCCJEA is the exclusive method for determining subject matter jurisdiction for child custody proceedings in California. (§§ 3421, subd. (b), 3402, subd. (d); *In re M.M.* (2015) 240 Cal.App.4th 703, 715; *In re Gino C.* (2014) 224 Cal.App.4th 959, 965.) A dependency action is a child custody proceeding under the UCCJEA. (§ 3402, subd. (d); *In re M.M.*, at p. 715.) Subject matter jurisdiction over a dependency action or other child custody proceeding either exists or does not exist at the time the petition is filed, and jurisdiction under the UCCJEA may not be conferred by mere presence of the parties or by stipulation, consent, waiver, or estoppel. (*In re A.M.* (2014) 224 Cal.App.4th 593, 597-598; *Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1316-1317.)

Section 3421 sets forth four alternative bases for subject matter jurisdiction in child custody proceedings, providing:

> "(a) Except as otherwise provided in Section 3424, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true:
>
> "(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.
>
> "(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true: [¶] (A) The child and the child's parents, or the

9

child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

"(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428.

"(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

A child's home state has priority over other jurisdictional bases. (§ 3421, subd. (a)(1); *Brewer v. Carter, supra*, 218 Cal.App.4th at p. 1317.)

On appeal, "when the facts are contested, a trial court's jurisdictional finding under the UCCJEA is reviewed under the deferential substantial evidence standard. [Citations.] When conducting a substantial evidence review, we must review the entire record in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences in support of the family [or juvenile] court's findings. [Citation.] The family [or juvenile] court's resolution of conflicts in the evidence and credibility assessments are binding on this court. [Citation.]" (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1286-1287, fn. omitted (*Schneer*).)[5] In contrast, we review de novo, or independently, a juvenile

_____

5    *Schneer, supra*, 242 Cal.App.4th 1276, discussed the origin of the contrary independent standard of review adopted in *In re A.C.* (2005) 130 Cal.App.4th 854, 860, concluding *A.C.*'s rule was based on *In re Marriage of Fox* (1986) 180 Cal.App.3d 862, which decision did not support such a rule. (*Schneer*, at pp. 1283-1287.) *Schneer* stated: "[T]he notion an appellate court may independently reweigh the trial court's findings of

court's determination of jurisdictional facts based on undisputed evidence and its interpretation of statutes. (*Schneer*, at pp. 1286, fn. 5, 1287.)

II

*Subject Matter Jurisdiction Over A.C.'s and E.C.'s Cases*

Mother contends the juvenile court erred by concluding it had subject matter jurisdiction under the UCCJEA over A.C.'s and E.C.'s juvenile dependency cases. In particular, she argues the court erred by not verifying and authenticating on the record that its e-mails to Mexico authorities were, in fact, sent to the correct e-mail addresses and appropriate judicial authorities in Mexico and that those e-mails were actually received by those authorities. Mother argues that without such verification and authentication, the record does not show that the Mexico courts affirmatively declined to exercise home state jurisdiction over the cases under the UCCJEA based solely on their failure to timely respond to the juvenile court's e-mails. Mother also contends the court could not exercise subject matter jurisdiction under section 3421, subdivision (a)(2), because there is no evidence showing that the children and at least one parent had significant connections to California other than mere physical presence and that there is

_____

jurisdictional facts runs counter to the fundamental principle that appellate courts do not reweigh facts and generally must defer to the trial court's resolution of credibility and conflicts in the evidence. [Citations.]" (*Id*. at pp. 1285-1286.) We agree with the reasoning in *Schneer* and therefore apply the substantial evidence standard in this case in reviewing the juvenile court's findings on jurisdictional facts to the extent they are based on disputed or contested evidence. In any event, had we instead applied the *In re A.C.* independent review rule, we nevertheless would have reached the same conclusions and dispositions as set forth below.

substantial evidence available in California concerning the children's care, protection, training, and personal relationships.

A

At the June 16, 2015 hearings, Agency raised the issue of the court's jurisdiction under the UCCJEA based on Mother's report that she and the children had lived in Mexico for the past nine years. Presumably recognizing Mexico was the children's home state under the UCCJEA, Agency recommended that the court take temporary emergency jurisdiction under the UCCJEA and then contact Mexico courts to determine whether they were interested in exercising jurisdiction over the case before deciding the question of its subject matter jurisdiction. The court stated it would send an e-mail to Mexico authorities to determine whether or not they were willing to defer subject matter jurisdiction to it.

At the July 15, 2015 hearings, the juvenile court, as discussed above, described on the record its attempts to contact Mexico court authorities. It stated it had sent e-mails on July 2, 2015, and on July 6, 2015, to two Mexico family court judges and had also made several telephone calls in unsuccessful attempts to speak with them. The court gave counsel for Agency and Mother copies of the contact information it used. The relevant text of those e-mails is quoted in footnote 2 above. In particular, the court's e-mails asked the Mexico court authorities whether they "decline to exercise jurisdiction over this case in favor of California assuming jurisdiction[.]" Having not received a response by its stated July 14, 2015 deadline, the court found it had complied with the UCCJEA by giving notice to Mexico of the proceedings in these cases and of Mexico's ability to go

12

forward with its own proceedings in its jurisdiction and then took subject matter

jurisdiction over the cases in lieu of the Mexico courts taking jurisdiction.

B

The parties agree, and the record show, that Mexico was the children's home state

within the meaning of the UCCJEA. The parties also agree, and we concur, that the

juvenile court properly assumed temporary emergency jurisdiction over the children's

cases under section 3424. However, the parties disagree on whether the court erred by

finding Mexico, as their home state, declined to exercise its subject matter jurisdiction on

the ground that California was the more appropriate forum under section 3421,

subdivision (a)(2) or (a)(3), quoted above. Mother argues the court's failure to receive a

timely response from Mexico judicial authorities does not support the inference that

Mexico declined to exercise its jurisdiction on the ground that California is the more

appropriate forum. (§ 3421, subds. (a)(2), (a)(3).)

In particular, Mother argues the court erred because the record does not show it

verified and authenticated that its e-mails to Mexico authorities were, in fact, sent to the

correct e-mail addresses and appropriate judicial authorities in Mexico and that those e-

mails were actually received by those authorities.[6] However, she did not raise those

---

6      Mother does not assert, nor could she successfully assert, that the juvenile court
erred by communicating with the Mexico courts by means of e-mail. Although section
3410, subdivision (a), does not specifically identify the means by which a California
juvenile court may "communicate" with a court in another state concerning a proceeding
arising under the UCCJEA, we presume that, given the widespread use of e-mail
communication for both personal and business purposes in today's society,
communication by means of e-mail, which is an electronic form of communication, is

13

issues or objections below and therefore forfeited or waived for purposes of appeal any arguments that the court erred in its procedures. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [" 'An appellate court will ordinarily not consider procedural defects . . . where an objection could have been but was not presented to the lower court by some appropriate method . . . . [I]t is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]"].) In this case, it would be unfair to both the juvenile court and Agency for Mother to receive all of the court's contact information and correspondence with Mexico judicial authorities at the July 15, 2015 hearing and then not raise any objections or concerns that the e-mail addresses or judicial authorities were incorrect or that there was no affirmative showing they received the e-mails at the time of that hearing or at any of the many hearings thereafter through the court's February 14, 2017 order that was issued 19 months later. (*Ibid*.) If Mother had believed any of the court's contact information was incorrect, she could, and should, have independently ascertained the correct information and then informed the court of that information or, at least, raised the issue of possible incorrect contact information during the July 15, 2015 hearings or thereafter. By not doing so, she has forfeited or waived any such procedural errors by the court. To the extent Mother argues there can be no forfeiture or waiver of those purported errors because they were substantive, and not procedural, errors, we disagree. Mother does not cite any case or other authority showing that a juvenile court's

---

one acceptable means of communicating with a court of another state under the UCCJEA. (§ 3410, subd. (a).)

subject matter jurisdiction under section 3421, subdivision (a)(2) or (a)(3), is dependent on an affirmative showing on the record that the court verified and authenticated that its contact information for Mexico or other foreign state judicial authorities was correct and that those authorities did, in fact, receive its correspondence and, yet, did not respond. Accordingly, we conclude the purported errors were of a procedural, and not substantive, nature and were therefore subject to forfeiture or waiver for failure to timely raise any objections below.  (*Doers*, at p. 184, fn. 1.)

Furthermore, because Mother has not cited any case or other authority showing the court had a duty under the UCCJEA or otherwise to state on the record that it had verified and authenticated that its e-mails were sent to the correct e-mail addresses and to the appropriate judicial authorities in Mexico or that those e-mails were actually received by those authorities, she waived that argument or, at least, has not carried her burden on appeal to show the court erred by not doing so.  "Appellate briefs must provide argument and legal authority for the positions taken."  (*Nelson v. Avondale HOA* (2009) 172 Cal.App.4th 857, 862.)  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)  If an argument in an appellate brief is supported by only an opinion or argument of appellant's counsel without "citation to any recognized legal authority," that argument may be deemed waived for failure to present supporting substantive legal analysis.  (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979; see also *People v. Stanley* (1995) 10 Cal.4th 764, 793; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368; *MST Farms v. C.*

15

*G. 1464* (1988) 204 Cal.App.3d 304, 306.)  By not citing any legal authority showing the court had the duties Mother asserts, she has forfeited or waived those arguments.

In any event, we nevertheless conclude the court properly verified and authenticated its contact information for the Mexico judicial authorities.  All intendments and presumptions are made to support a trial court's judgments, orders, rulings, and other actions where the record is silent, and it is the appellant's burden on appeal to show those actions are erroneous.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956; *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631-632.)  Accordingly, although the record in this case may not affirmatively show the court verified and authenticated that the e-mail addresses and Mexico judicial authorities were correct, we must presume the court properly acted because the record is silent on those issues.  (*Denham*, at p. 564; *Cahill*, at p. 954; *Winograd*, at pp. 631-632.)  Likewise, we presume the court properly inferred those authorities did, in fact, receive its e-mails because the record does not show otherwise.  As discussed above, the court stated on the record that it had sent two e-mails to Mexico family court authorities and made several telephone calls in attempts to speak with them and provided counsel with copies of the e-mails and its contact information. The court also stated on the record that it had not received any response from those authorities by the time of the deadline (i.e., July 14, 2015) set forth in its e-mails. Because Mother has not cited, and we are unaware of, anything in the record affirmatively showing the court did not verify or authenticate its contact information for the Mexico judicial authorities or that those authorities did not receive its e-mails, we

16

conclude Mother has not carried her burden on appeal to show the court erred by not verifying and authenticating on the record that contact information and their receipt of its e-mails.

Furthermore, even if Mother had shown the court erred by not stating that information on the record, that procedural error is subject to harmless error analysis. (*In re R.L.* (2016) 4 Cal.App.5th 125, 143 [UCCJEA procedural error requires showing of prejudice under *People v. Watson* (1956) 46 Cal.2d 818 standard to warrant reversal]; *In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1102-1103 [same]; *In re M.M., supra*, 220 Cal.App.4th at pp. 717-718 [same].) Mother has made no attempt to carry her burden on appeal to show it is reasonably probable she would have obtained a more favorable result had the court stated on the record its verification and authentication of the correctness of its contact information and the Mexico judicial authorities it contacted. In particular, Mother has not made any attempt on appeal to show the court used incorrect contact information for the appropriate Mexico judicial authorities. Therefore, we conclude that any such procedural error by the court does not require reversal of the instant orders. (*Watson*, at p. 836; *In re R.L.*, at p. 143; *In re Cristian I.*, at pp. 1102-1103; *In re M.M.*, at pp. 717-718.)

C

To the extent Mother contends the record does not support the court's finding that Mexico declined to exercise jurisdiction over the children's cases on the ground California was the more appropriate forum, we conclude there is substantial evidence to support the court's finding it may have jurisdiction under section 3421, subdivision (a)(2)

17

or (a)(3), because the Mexico judicial authorities' failure to timely respond to its e-mails was tantamount to their declination to exercise jurisdiction over the children's cases. Our recent opinion in *In re M.M., supra*, 240 Cal.App.4th 703, is instructive. In that case, Agency filed a dependency petition in the San Diego County Superior Court regarding a child who had lived for less than six months in California, but had previously lived in Japan, which presumably was the child's home state under the UCCJEA. (*Id.* at pp. 706, 711.) The juvenile court attempted to contact a family court in Japan to discuss whether it would exercise subject matter jurisdiction over the case. (*Id.* at pp. 710, 714-715.) However, Japan court representatives informed the juvenile court that it would be inappropriate for one of its judges to discuss by telephone or e-mail the matter of jurisdiction in a specific case. (*Id.* at p. 710.) The juvenile court also did not receive a timely response from the Japan court to its detailed certified letter sent by express mail. (*Id.* at p. 711.) Accordingly, the court stated it had exhausted its efforts to discuss the jurisdiction issue with a Japan court, concluded the Japan court was not interested in discussing that issue, and found it had jurisdiction under the UCCJEA.[7] (*Id.* at pp. 709, 712.)

---

[7]     After the juvenile court made its finding it had subject matter jurisdiction under the UCCJEA, it received a letter from a Japan judge responding to its letter. (*In re M.M., supra*, 240 Cal.App.4th at pp. 713-714.) The response letter stated that under the Japan legal system a judge is not allowed to discuss issues concerning jurisdiction over an individual case with a judge of another state. (*Id.* at p. 714.) At a subsequent hearing regarding that letter, the juvenile court concluded it was satisfied with its original ruling that it had subject matter jurisdiction under the UCCJEA. (*Id.* at pp. 713-714.)

18

On appeal, we noted that section 3421, subdivision (a)(2), was ambiguous regarding how a court of a home state or other potential forum state may decline jurisdiction. (*In re M.M., supra*, 240 Cal.App.4th at p. 716.) Rejecting a requirement that the home state decline jurisdiction by an express order finding that California is a more appropriate forum, we concluded "the home state can be deemed to have declined jurisdiction when it refuses for whatever reason to commit one way or the other to protect a child in a child custody proceeding or when, as in the instant case, it refuses to even discuss the issue of jurisdiction with another state . . . ." (*Ibid*.) Alternatively stated, "when a home state declines jurisdiction in any manner that conveys its intent *not* to exercise jurisdiction over a child in connection with a child custody proceeding, including inaction *or*, as in the instant case, by refusing to even discuss the issue of jurisdiction despite myriad good faith attempts to do so by the juvenile court, that such inaction or refusal is tantamount to a declination of jurisdiction by the home state on the grounds California is the more appropriate forum under subdivision (a)(2) of section 3421." (*Id*. at p. 717.) Accordingly, based on the record in that case, we concluded the juvenile court correctly found that the child's home state of Japan had declined jurisdiction on the ground California was the more appropriate forum under section 3421, subdivision (a)(2), that the child and at least one parent had significant connections to California other than mere physical presence, and that substantial evidence was available in California concerning the child's care, protection, training, and personal relationships. (§ 3421, subd. (a)(2)(A), (B).) Therefore, we concluded the juvenile court had subject matter jurisdiction over the case under the UCCJEA. (*Ibid*.)

19

We conclude our reasoning and holding in *In re M.M., supra*, 240 Cal.App.4th 703, supports the juvenile court's finding that it had subject matter jurisdiction under section 3421, subdivision (a)(2) or (a)(3), because the Mexico judicial authorities' failure to respond to its e-mails was tantamount to their declination to exercise jurisdiction over the children's cases. Similar to the juvenile court in *In re M.M.*, the court here attempted to discuss with a court of another state whether it would exercise jurisdiction over the dependency cases. Although in *In re M.M.* the Japan court representatives affirmatively indicated the court could not, or would not, discuss the issue of jurisdiction with the court and the juvenile court in these cases apparently was unable to speak substantively with Mexico court representatives, we do not believe that distinction requires a different result. Accordingly, we conclude the Mexico judicial authorities' inaction by failing to timely respond to the court's e-mails was tantamount to their declination to exercise jurisdiction over the children's cases on the ground California was the more appropriate forum. (§ 3421, subds. (a)(2), (a)(3); *In re M.M.*, at pp. 716-717.) *In re Gino C., supra*, 224 Cal.App.4th 959 and *In re A.M., supra*, 224 Cal.App.4th 593, cited by Mother, are factually and procedurally inapposite to these cases and do not persuade us to reach a contrary conclusion.

D

Mother also asserts the court could not exercise subject matter jurisdiction under section 3421, subdivision (a)(2), because there is no evidence showing that the children and at least one parent had significant connections to California other than mere physical presence and that there is substantial evidence available in California concerning the

children's care, protection, training, and personal relationships. However, Mother fails to acknowledge and dispute evidence in the record showing that Mother and the children had significant connections to California and that there is substantial evidence in California regarding the children's care, protection, training, and personal relationships. (§ 3421, subd. (a)(2).)

*Significant connections to California.*

The record shows, and Mother apparently does not dispute, that she had significant connections to California. She lived in California for most, if not all, of her life before A.C. was born and then moved to Mexico when M.C. was deported. The record shows she periodically returned to the United States even after she began residing in Mexico. In particular, Mother apparently was visiting her mother (i.e., the children's maternal grandmother) when the incident occurred that resulted in her April 2015 arrest in San Luis Obispo.

The record also shows A.C. had significant connections to California. His paternal grandfather, who apparently lived in or near Monterey, California, told Agency that he had often provided daily care for A.C. and assisted with taking him to medical appointments. Furthermore, although the record is silent, it can be reasonably inferred that A.C. was in California with Mother in April 2015 when she visited A.C.'s maternal grandmother because there is no evidence that M.C. or anyone else in Mexico provided care for him.

The record also supports an inference that E.C. had significant connections to California. Although the record does not show the paternal grandfather provided any

21

daily care for E.C., it can be reasonably inferred that E.C. was in California with Mother in April 2015 when she visited E.C.'s maternal grandmother because there is no evidence that M.C. or anyone else in Mexico provided care for him. Furthermore, it could be reasonably argued that through his relationship to A.C. as his brother, E.C., who had lived with A.C. since his birth, indirectly has the same significant connections to California as A.C. does. A similar argument could be made based on E.C.'s relationship to Mother and her significant connections to California.

Therefore, the record supports the court's finding that Mother, A.C., and E.C. had significant connections to California at the time the children's dependency petitions were filed. (§ 3421, subd. (a)(2)(A).)

*Substantial evidence regarding the children.*

We further conclude there was substantial evidence in California regarding A.C.'s and E.C.'s care, protection, training, and personal relationships at the time their dependency petitions were filed. (§ 3421, subd. (a)(2)(B).) As discussed above, the paternal grandfather, who apparently lived in or near Monterey, California, told Agency that he had often provided daily care for A.C. and assisted with taking him to medical appointments. Therefore, the paternal grandfather presumably could provide evidence regarding A.C.'s care, protection, training, and personal relationships. Furthermore, Agency cared for A.C. from May 21, 2015, until May 26, 2015, when the children's dependency petitions were filed. Accordingly, Agency presumably also could provide evidence regarding his care, protection, training, and personal relationships. (§ 3421, subd. (a)(2)(B).)

22

Likewise, there is substantial evidence in California regarding E.C.'s care, protection, training, and personal relationships. Although the record is silent, it can be reasonably inferred that E.C. was in California with Mother in April 2015 when she visited E.C.'s maternal grandmother because there is no evidence that M.C. or anyone else in Mexico provided care for him. Therefore, E.C.'s maternal grandmother may have evidence regarding E.C.'s care, protection, training, and personal relationships. Furthermore, Agency cared for E.C. from May 21, 2015, until May 26, 2015, when the children's dependency petitions were filed. Accordingly, Agency presumably also could provide evidence regarding his care, protection, training, and personal relationships. (§ 3421, subd. (a)(2)(B).)

E

Based on the record in the children's cases, we conclude the juvenile court properly found it had subject matter jurisdiction over their cases under section 3421, subdivision (a)(2). Specifically, as discussed above, the record supports findings that Mexico declined to exercise jurisdiction over their cases on the ground California was a more appropriate forum, that Mother and the children had significant connections to California other than mere physical presence at the time of the filing of the dependency petitions, and there is substantial evidence regarding the children's care, protection, training, and personal relationships at the time of the filing of the petitions. (§ 3421, subd. (a)(2).)

In any event, assuming arguendo that the record does not support findings either that Mother and the children had significant connections to California (§ 3421, subd.

23

(a)(2)(A)) or that there is substantial evidence in California regarding the children's care, protection, training, and personal relationships (§ 3421, subd. (a)(2)(B)), we nevertheless conclude the juvenile court necessarily had subject matter jurisdiction under section 3421, subdivision (a)(3). The only substantive difference between the language of section 3421, subdivision (a)(2), and section 3421, subdivision (a)(3), is the latter's omission of the significant connections and substantial evidence of care requirements stated in section 3421, subdivision (a)(2)(A) and (B).[8] Based on the record, there is no other state that possibly could exercise jurisdiction over the children's dependency cases other than Mexico or California. Therefore, because, as we discussed above, Mexico declined to exercise jurisdiction over the children's cases on the ground California was the more appropriate forum, we conclude that the juvenile court had subject matter jurisdiction over their cases under section 3421, subdivision (a)(3), regardless of whether it also had jurisdiction under section 3421, subdivision (a)(2).

DISPOSITION

The orders are affirmed.

---

[8] Under section 3421, subdivision (a)(3), a court has subject matter jurisdiction if: "All courts having jurisdiction under paragraph (1) or (2) [of section 3421, subdivision (a)] have declined jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428."

24

_____
                    HALLER, J.

WE CONCUR:


_____
McCONNELL, P. J.


_____
O'ROURKE, J.

Filed 7/21/17

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D071772 |
| Plaintiff and Respondent, | (Super. Ct. No. J519194A, B) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| K.C., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed June 30, 2017, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

26

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____
McCONNELL, P. J.

Copies to:  All parties