Filed 5/3/22  In re C.Y. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re C.Y. et al.,<br><br>      Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>A.Y.,<br><br>      Defendant and Appellant. | A163387<br><br>(Alameda County<br>Super. Ct. Nos. JD033671-01,<br>JD033672-01, JD033673-01) |

        A.Y. (mother) appeals from orders of the juvenile court finding it lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code,[1] § 3400 et seq.) to make initial child custody determinations regarding her three children, C.Y., R.Y., and M.Y.  Mother argues the juvenile court erred in (1) concluding that Iowa, not California, had subject matter jurisdiction over the proceedings, and (2) finding that Iowa was the more appropriate forum under section 3427 without first

_____

        [1] Undesignated statutory references are to the Family Code.

1

considering all of the statutory factors relevant to that determination and allowing the parties to present evidence.  We affirm.

## BACKGROUND[2]

Mother and U.Y. (father) are married and have three children:  C.Y., R.Y., and M.Y.[3]  The children were born in Colorado in 2008, 2010, and 2013, respectively, and are United States citizens.  At various times, the children and parents lived in Colorado, Iowa, or Mexico.

On June 17, 2021, the Agency filed dependency petitions in the Alameda County Superior Court on behalf of each child for failure to protect (Welf. & Inst. Code, § 300, subd. (b)(1)) and the lack of provision for support. (*Id.*, § 300, subd. (g).)  The petitions alleged that in 2016 and 2017, Iowa child welfare authorities brought allegations of child abuse and/or neglect against the parents, who were both incarcerated, and left the children in the care of a family friend with a history of drug use.  The petitions also alleged that on May 20, 2020, while the children were living with father in Mexico, they were removed from his care based on allegations that father was using drugs and had left the children to live in a known drug house.  Finally, the petitions alleged that as of May 21, 2021, mother had been serving a seven-year sentence in federal prison in Dublin, California.

---

[2] Separate dependency petitions were filed on behalf of each child, and the record on appeal includes three clerk's transcripts corresponding to each case.  The Agency notes that the clerk's transcripts are duplicative, and therefore the only clerk's transcript cited by the parties is the one filed in *In re C.Y.* (Super. Ct., Alameda County, No. JD-033671-01).  We have reviewed the record and agree that the clerk's transcripts contain substantively the same documents.  As do the parties, we cite to the clerk's transcript in *In re C.Y.* for ease of reference.

[3] U.Y., the alleged father of the children, is not R.Y.'s biological father, whose whereabouts were unknown to mother or the family.

2

In its detention report, the Agency noted it was investigating whether Iowa was the home state of the children. In an interview, father stated that he was born in Mexico and subsequently moved to the United States. In 2018, he was deported to Mexico in 2018 when he was released from prison for immigration issues. Mother and the children then moved from Iowa to Mexico in 2019. In May 2020, Sistema Naccional Para El Desarrollo Integral De La Familia (SNDIF), Mexico's child welfare authorities, removed the children from father's care due to allegations that father was using drugs and the children were living in a known drug house. At that time, mother was incarcerated in San Diego, California, and did not have family who could provide for the children. Because the children were United States citizens and father declined to speak with SNDIF regarding reunifying or regaining custody, SNDIF did not recommend returning the children to father. In June 2020, SNDIF formally requested the repatriation of the children. Then, on June 15, 2021, after living in a detention center in Mexico for one year, the children were picked up at the Mexican Consulate at the United States border by an emergency response worker with the Agency and were delivered into protective custody at the Agency's assessment center.

The Agency recommended that the court exercise temporary emergency jurisdiction under the UCCJEA over the children and detain them until their home state was determined.

A detention hearing was held on June 21. Mother objected to the juvenile court making any orders on the grounds that neither Alameda County nor the State of California was a proper venue for the cases, and requested the dismissal of the cases pending a finding of the proper jurisdiction. Over mother's objection, the court asserted temporary emergency jurisdiction and detained the children. The court continued the

3

matter, ordered the Agency to continue its efforts towards ascertaining the children's home state, and set a combined jurisdiction and disposition hearing for July 9.

In connection with that hearing, the Agency prepared a report, which noted it had reached out to child welfare authorities in Iowa and a clerk in the Iowa District Court for Polk County, Juvenile Division (Iowa court). A judge assigned to the Iowa court responded it did not have an existing case related to the children. The Agency also reported that Iowa was the last state the children lived in prior to moving to Mexico in 2019. Additionally, the children last attended school and received medical and dental services in Polk County in 2019.

At the July 9 hearing, the Agency reported it still had not determined whether the children's home state was Iowa or Colorado, and thus the court ordered the Agency to continue its investigation on that issue. The court added that once it had more information concerning the children's contacts with Iowa, it would reach out to the Iowa court to discuss the issue of jurisdiction. The court maintained temporary emergency jurisdiction and continued the jurisdiction and disposition hearing to July 21.

At the hearing on July 21, the juvenile court stated it had no updates on whether the Iowa court was willing to accept jurisdiction. The court made several attempts to contact the judge in the Iowa court but the two courts were only able to exchange voicemails. Retaining emergency jurisdiction under the UCCJEA, the court continued the hearing to August 12.

On August 11, the Agency filed an addendum report stating its investigation into the children's home state was still ongoing. Mother told the Agency that she was raised in Iowa and lived in Colorado in the 20 years prior to her incarceration. A family friend and teacher of the children also

4

reported that mother and father moved from Colorado to Iowa. When asked about knowing or contacting any relatives, R.Y. stated he would like to return to Iowa. M.Y. also expressed she wanted to live in Iowa with mother's close friend, to whom the children felt connected. C.Y. stated that if they had to leave Alameda County, they would want to live with an aunt in Iowa. The Agency recommended that the court find that the children's home state still was unknown and continue to exercise temporary emergency jurisdiction.

On August 12, the court held a hearing, at which mother was present and the parties presented arguments on whether the juvenile court had subject matter jurisdiction under the UCCJEA. The Agency informed the court that, depending on the status of the court's conversations with the Iowa court regarding jurisdiction, it was prepared to make the following alternative recommendations: if the Iowa court was willing to accept jurisdiction, then the Agency would request that the cases be transferred to Iowa. But if the Iowa court declined jurisdiction, then the Agency would recommend that the juvenile court accept jurisdiction. The juvenile court stated that because there was no open case in the Iowa court, it "[was] like . . . well what can we do[?]"

The juvenile court, however, determined that it was empowered to decide if it had jurisdiction under the UCCJEA, regardless of whether other states were "willing to take jurisdiction" or whether a suitable placement for the children in those states could be found. The court also rejected the suggestion from the children's attorney that either Iowa or Colorado declined to exercise jurisdiction, stating, "Nobody is declining."

The Agency also argued that the home state of the children was not California. Mother's counsel stated she did not "know if [the children] really do have Iowa as a possible home state." In any event, she requested that the

5

children remain in California because a placement in California was found and mother wanted an opportunity for visitation. Father's counsel responded, "It is really clear that the children have not lived in California prior to Mexico releasing them to Alameda County. [¶] . . . [¶] [T]here are ties in Colorado, as well as in Iowa, but there is no relative or anyone here."

Following that argument, the court concluded it had no jurisdiction under the UCCJEA for the following reasons.

"The Court finds that the children have not resided in the State of California, neither parent has significant contacts with the State of California.

"The fact that the mother was caused to be incarcerated in federal prison in Dublin, California, does not establish residency, per se.

"And certainly not for the children. [¶] . . . [¶]

"The Court is aware that [C.Y.], the oldest child, attended school in Des Moines, Iowa, from about July of 2016 to October of 2019. [¶] [R.Y.] attended school in Des Moines, Iowa from July 2017, to that same period, October 2019, wherein the children moved to Baja, California, in the Nation of Mexico. [¶] And, then, little [M.Y.] attended school, including pre-k[indergarten], also in Des Moines, Iowa, from 2017 to—and through the first grade, part of the year, at least, in October of 2019, when the family moved to Mexico. [¶] And there is child welfare history in Polk County, Iowa, with numerous reports where the Court is aware, in 2018, 2017, and 2016.

" . . . I think Iowa is the home state of these children, and certainly there is no home state standing here in California.

"[T]he Agency shall cause the children to be returned to Iowa."

The court then ordered the transfer of the cases to the Iowa agency for children and family services.

6

The next day, mother filed a motion for reconsideration, arguing that the home state of the children was Mexico, not Iowa, and since Mexico declined jurisdiction, California assumed jurisdiction pursuant to section 3421, subdivision (a).[4] Mother also argued that transferring the children to Iowa would not be in their best interests.

On September 1, the court held a hearing on the motion for reconsideration at which a child welfare supervisor from Polk County was present. The supervisor reported she was in contact with a relative in Iowa who was willing to take custody of the children but still needed to complete a background check.

Mother's counsel then presented arguments on the motion for reconsideration. She asserted "there were new facts" warranting reconsideration. However, the allegedly new facts she pointed to were those contained in the Agency's report prepared for the prior hearing, namely that the children last lived in Iowa in 2019. Counsel argued "regarding the significant connection to Iowa, this is news to us" and requested an evidentiary hearing to "flush out more facts." Additionally, counsel stated an evidentiary hearing would allow mother to assert "facts that might lead the Court to believe that maybe there are more significant connections to California because [mother] is currently incarcerated in a federal prison in Dublin" and thus a "resident of California." Counsel also maintained that Mexico, not Iowa, was the children's home state.

---

[4] The minors also filed a motion for reconsideration, arguing that Iowa was not their home state, and that the court's resolution of the jurisdiction issue was premature because it was still possible that the Iowa court could still decline jurisdiction. However, minors' counsel later withdrew the motion after learning of a potential placement with a relative in Iowa.

The court denied the motion for reconsideration, on the grounds that mother raised no facts or law that was not available or presented as of the August 12 hearing.

This appeal followed.

## DISCUSSION

Mother argues that the juvenile court erred in finding it did not have subject matter jurisdiction under the UCCJEA. She also contends the court abused its discretion in finding, on its "own motion," that Iowa was the more convenient forum under section 3427 and declining to exercise the jurisdiction it had. We reject these arguments.

### Subject Matter Jurisdiction

#### *The Law*

The UCCJEA is the exclusive method for determining subject matter jurisdiction for child custody proceedings involving other jurisdictions. (§ 3421, subd. (b); *In re A.C.* (2017) 13 Cal.App.5th 661, 668 (*A.C.*).) "The UCCJEA is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees." (*In re R.L.* (2016) 4 Cal.App.5th 125, 136.) Foreign countries are treated as states for the purpose of determining jurisdiction. (§ 3405, subd. (a).)

"Subject matter jurisdiction over a dependency action or other child custody proceeding either exists or does not exist at the time the petition is filed, and jurisdiction under the UCCJEA may not be conferred by mere presence of the parties or by stipulation, consent, waiver, or estoppel." (*A.C.*, *supra*, 13 Cal.App.5th at p. 668.)

Section 3421, subdivision (a) sets forth four alternative ways a target state gains subject matter jurisdiction.[5]

The first is if the target state has "home state" jurisdiction. (§ 3421, subd. (a)(1). A child's "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." (§ 3402, subd. (g).)

The second is "significant connection" jurisdiction. (§ 3421, subd. (a)(2).) This applies if no state had home state jurisdiction, or if the home state declines to exercise jurisdiction because the target state is a more appropriate forum, and (A) the child and at least one parent have a significant connection with the state, and (B) substantial evidence is available in the target state "concerning the child's care, protection, training, and personal relationships." (§ 3421, subd. (a)(2).)

The third basis for jurisdiction arises if all courts that have jurisdiction under the first two grounds have declined to exercise jurisdiction because a court of the target state is the more appropriate forum. (§ 3421, subd. (a)(3).)

The fourth basis is if no court of any state would have jurisdiction under the first three grounds. (§ 3421, subd. (a)(4).)

---

[5] Even if jurisdiction under section 3421, subdivision (a) rests with another state or a country, a California court may exercise "temporary emergency jurisdiction" where, as here, a "child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse." (§ 3424, subd. (a).) However, temporary emergency jurisdiction does not confer authority to make a permanent child custody determination. (*In re C.T.* (2002) 100 Cal.App.4th 101, 108.)

9

Section 3421, subdivision (c) provides that "[p]hysical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination."

On appeal, when facts are contested, we review the juvenile court's jurisdictional finding under the UCCJEA for substantial evidence. (*A.C.*, *supra*, 13 Cal.App.5th at p. 669.) " 'When conducting a substantial evidence review, we must review the entire record in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences in support of the family [or juvenile] court's findings.' " (*Ibid.*) However, we independently review the juvenile court's interpretation of statutes and its determination of jurisdictional facts based on undisputed evidence. (*Id.* at p. 670.)

### *The Juvenile Court Correctly Found It Lacked Jurisdiction*

The parties agree, and the record shows, that California is not the home state of the children. There also is no dispute, and we agree, there is no evidence that the children and at least one parent had a "significant connection" with California other than mere physical presence. Accordingly, subject matter jurisdiction in California did not exist under the first and second bases under section 3421, subdivision (a).

Instead, mother argues California has the third kind of jurisdiction because all of the courts having jurisdiction—Iowa and Mexico—have declined to exercise jurisdiction on the ground that California is the more appropriate forum. (§ 3421, subd. (a)(3).) Therefore, she contends the juvenile court erred in finding it lacked jurisdiction.

In determining whether California assumed jurisdiction under section 3421, subdivision (a)(3), we begin by addressing whether Iowa or Mexico had jurisdiction, either because it was the home state of the children

10

or the children had a significant connection with it. (See § 3421, subd. (a)(1), (2).) We turn first to the issue of the children's home state. A child's "home state" under the UCCJEA is the state in which they "lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of [this] child custody proceeding." (§ 3402, subd. (g).) The dependency proceedings commenced on June 17, 2021. It is undisputed that for at least six months prior to that date the children lived in Mexico under the care of Mexican child welfare authorities. Thus, mother argues that Mexico, not Iowa, was the home state of the children. We agree and conclude the court incorrectly found Iowa to be the children's home state.

The court's error, however, was harmless. (See *In re A.G.* (2020) 58 Cal.App.5th 973, 1015 [appellate courts generally apply harmless error analysis in dependency proceedings, asking whether it is " 'reasonably probable the result would have been more favorable to the appealing party but for the error' "]; accord, *In re M.S.* (2019) 41 Cal.App.5th 568, 590–591; *In re Celine R.* (2003) 31 Cal.4th 45, 59–60.) As now explained, mother concedes that Iowa otherwise had jurisdiction based on the "significant connection" test, and she cannot show that Iowa declined to exercise jurisdiction—thereby failing to establish California assumed jurisdiction under section 3421, subdivision (a)(3).

Even if Iowa did not have "home state" jurisdiction, the record supports a finding that Iowa had "significant connection" jurisdiction. (§ 3421, subd. (a)(2), .) The Agency asserts, and mother does not dispute, that the children and at least one parent have a significant connection with Iowa, and substantial evidence is available in Iowa "concerning the child[ren's] care, protection, training, and personal relationships." (§ 3421, subd. (a)(2)(A), (B).) As the Agency notes, the evidence demonstrates that the children

11

resided in Iowa with one or both of their parents between 2016 and 2019; they received medical and dental services and attended school in Iowa during that time frame; social services agencies in Iowa were familiar with the family, as there were allegations of abuse and neglect in 2016, 2017, and 2018 while they were living in Iowa; the children identified family friends or relatives in Iowa whom they either lived with previously or felt close to, and whom they wanted to live with during the pendency of these proceedings; and the Polk County child welfare supervisor indicated it was already in contact with a relative in Iowa, and the relative was willing to take custody of the children. All of this more than amply demonstrates the family's significant connections to Iowa and the availability of evidence about the children in Iowa.

Having established that Mexico and Iowa had "home state" or "significant connection" jurisdiction, we next determine if they declined to exercise jurisdiction on the ground that California was the more appropriate forum. (§ 3421, subd. (a)(3).) Relying on *In re M.M.* (2015) 240 Cal.App.4th 703 (*M.M.*), mother argues "[b]oth Iowa and Mexico had no intention of exercising jurisdiction and their actions inferred a declination of jurisdiction." In *M.M.*, the social services agency filed a dependency petition in the San Diego County Superior Court regarding a child who had lived for less than six months in California, but had previously lived in Japan, which was deemed the child's home state. (*Id.* at pp. 706, 711.) The juvenile court attempted to contact a family court in Japan to discuss whether it would exercise jurisdiction over the case. (*Id.* at pp. 710, 714–715.) Japan court representatives, however, informed the juvenile court that it would be inappropriate for one of its judges to discuss by telephone or e-mail the matter of jurisdiction regarding a specific case. (*Id.* at p. 710.) The juvenile

court also did not receive a timely response from the Japan court to a detailed letter regarding jurisdiction.  (*Id*. at p. 711.)  Accordingly, the court stated it had exhausted its efforts to discuss the jurisdiction issue with a Japan court, concluded the Japan court was not interested in discussing that issue, and found it had jurisdiction under the UCCJEA.  (*Id*. at pp. 709, 712.)

The appellate court affirmed.  (*M.M.*, *supra*, 240 Cal.App.4th at pp. 718–719.)  The court rejected a requirement that the home state decline jurisdiction by an express order finding that California is a more appropriate forum.  Adopting such a rule, the court explained, "has the real potential to leave a child in a child custody proceeding in a state of limbo between two forums," a result that "would be antithetical" to the dependency scheme and its underlying public policy favoring prompt resolution.  (*Id*. at pp. 716–717.)  The court endorsed a different approach:  "[W]hen a home state declines jurisdiction in any manner that conveys its intent *not* to exercise jurisdiction over a child in connection with a child custody proceeding, including inaction or, as in the instant case, by refusing to even discuss the issue of jurisdiction despite myriad good faith attempts to do so by the juvenile court, . . . such inaction or refusal is tantamount to a declination of jurisdiction by the home state on the grounds California is the more appropriate forum . . . ."  (*M.M.*, at p. 717.)

Under the reasoning of *M.M.*, we agree with mother that Mexico conveyed its intent not to exercise jurisdiction over the dependency cases when it declined to return the children to father in Mexico, physically turned over the children to the Agency's custody, and formally requested the children's repatriation.

Mother argues Iowa also declined jurisdiction but does not provide any supporting facts or reasoned legal argument.  It is mother's, not this court's,

13

obligation to develop points raised on appeal, and her failure to do so allows us to deem the argument forfeited. (See *A.C., supra,* 13 Cal.App.5th at p. 672.) Mother's attempt to expound on the argument in her reply brief does not cure her failure to develop it in her opening brief. (See *Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6.)

Forfeiture aside, we disagree that the Iowa court conveyed an intent not to exercise jurisdiction. In contrast to the Japan court in *M.M.*, the Iowa court did not refuse to discuss the issue of jurisdiction with the juvenile court. Nor did it ignore the juvenile court's phone calls. Although the Iowa court stated that it had no open case regarding the children and did not provide a definitive answer to the jurisdiction question, these facts do not convey its intent not to exercise jurisdiction, as mother asserts. At most, the evidence showed the Iowa court was unclear on how to proceed because of the lack of an open case. Further, there is no evidence suggesting the Iowa court believed California to be the more appropriate forum. To the contrary, after this appeal was filed, dependency cases on behalf of the children were brought in the Iowa court, which expressly found it had subject matter jurisdiction.[6]

Thus, because the record supports that the Iowa court had jurisdiction and did not decline to exercise it, mother has not established California gained the third kind of jurisdiction. (§ 3421, subd. (a)(3).) For this reason, jurisdiction in California also did not exist under the fourth statutory basis because it cannot be said that "[n]o court of any other state would have jurisdiction." (§ 3421, subd. (a)(4).)

---

[6] We previously granted the Agency's unopposed request that we take judicial notice of the pleadings filed in the children's Iowa court cases.

14

In sum and in short, the juvenile court did not err in concluding it lacked jurisdiction.

**Remaining Arguments under Section 3427**

We turn to mother's arguments based on section 3427, which provides: "A court of this state that has jurisdiction under this part to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court." (§ 3427, subd. (a).) In making this determination, a court "shall consider all relevant factors" enumerated in section 3427 and "shall allow the parties to submit information" on the issue. (§ 3427, subd. (b).) Mother argues that the juvenile court abused its discretion in finding, on its "own motion," that Iowa was the more convenient forum under section 3427 because it did not consider all of the factors set forth in that provision and did not give her an opportunity to present evidence. The Agency counters that these arguments are forfeited due to mother's failure to raise them below and, in any event, lack merit. We agree with the Agency on both points.

Mother admits that she did not raise in the juvenile court the issue of whether the court should decline jurisdiction under section 3427. She nonetheless argues in her reply brief that the claim was not forfeited because she "raised subject matter jurisdiction" below. This argument is unavailing. Mother conflates the findings under section 3421—addressing whether subject matter jurisdiction in California exists—with the findings under section 3427—addressing whether a California court already deemed to have jurisdiction may decline to exercise it because another forum is more

15

appropriate. Because mother did not raise any arguments based on section 3427, she has forfeited such arguments on appeal. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 411–412 ["As a general rule, a party is precluded from urging on appeal any point not raised in the trial court"].)

Even if mother preserved her arguments, they fail on the merits. Contrary to mother's assertions, the record does not show the court made findings under section 3427. Nowhere does the court mention section 3427 or purport to apply the factors in section 3427, subdivision (b). Mother points to the court's statements that the children had "significant contacts with and lived over the past several years" in Iowa based on their attendance at school and child welfare history in Iowa. However, the court's statements indicate that it was analyzing the extent of children's contacts with Iowa for the purpose of determining whether it had jurisdiction under section 3421, subdivision (a). It was not considering whether Iowa was the more appropriate forum for purposes of section 3427. Simply put, the issue of inconvenient forum under section 3427 was not an issue before the court. Mother's assertion that the court inappropriately made section 3427 findings without affording her an opportunity to present evidence is unfounded.

Moreover, the juvenile court was correct not to consider section 3427 because that provision did not apply in this case. As noted, for a California court to decline jurisdiction on the grounds that another forum is more convenient under section 3427, the California court must have jurisdiction in the first instance. (§ 3427, subd. (a).) The juvenile court here found it did not have jurisdiction, a finding that we uphold. Thus, section 3427 did not apply, and the court was not required to consider any, much less all, of the enumerated factors in section 3427, subdivision (b).

## DISPOSITION

The orders appealed from are affirmed.

_____
Richman, Acting P. J.

We concur:


_____
Miller, J.


_____
Mayfield, J. *

*In re C.Y., R.Y., and M.Y.* (A163387)

   *Judge of the Mendocino Superior Court, Judge Cindee Mayfield, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.