Filed 6/11/24  M.M. v. C.S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE  OF CALIFORNIA

| | |
|---|---|
| M.M.,<br><br>    Appellant,<br><br>    v.<br><br>C.S.,<br><br>    Respondent. | D081628<br><br>(Super. Ct. No. 22FDV04321C)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed May 21, 2024, is modified as follows:

In the opinion filed May 21, 2024, footnote 6 on page 9 reads:

C.S. also asks us to take judicial notice of the Montana court's May 18, 2023 order issued while this appeal was pending in which that court ruled it had jurisdiction under both the UCCJEA and Montana law.  He points out the San Diego court took judicial notice of the order in postjudgment proceedings.  C.S. maintains the order is properly subject to judicial notice as a record of another court (Evid. Code, § 452, subd. (d)(2)), this court may judicially notice any matter noticed by the trial court (Evid. Code, § 459, subd. (a)(1)), and the order is relevant to whether M.M.'s appeal has been rendered moot by the Montana court's decision to exercise UCCJEA jurisdiction.  We may take judicial notice of the records of "any court of this state."  (Evid. Code, § 452, subd. (d)(1).)  However, the Montana court's order is irrelevant to this appeal

as it is outside the record on which the California court's judgment is based (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 530; accord, *Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 958), notwithstanding the fact the San Diego court later judicially noticed the document.

Footnote 6 on page 9 is replaced with the following footnote, so that the footnote now reads:

C.S. also asks us to make findings, accept additional evidence on appeal and take judicial notice of two items issued or filed while this appeal was pending:  (1) the Montana court's May 18, 2023 order in which that court ruled it had jurisdiction under both the UCCJEA and Montana law; and (2) M.M.'s December 2023 verified motion to amend the Montana court's parenting plan, in which M.M. asserted the Montana court had "exclusive and continuing jurisdiction" under Montana's version of the UCCJEA.  He points out the San Diego court took judicial notice of the May 2023 order in postjudgment proceedings, but not M.M.'s December 2023 motion.  C.S. maintains the order and motion are properly subject to judicial notice as records of another court (Evid. Code, § 452, subd. (d)(2)), as to the May 2023 order this court may judicially notice any matter noticed by the trial court (Evid. Code, § 459, subd. (a)(1)), and the order and motion are relevant to whether M.M.'s appeal has been rendered moot by the Montana court's decision to exercise UCCJEA jurisdiction as well as M.M.'s concession.  We may take judicial notice of records of "any state of the United States."  (Evid. Code, § 452, subd. (d)(2).)  The Montana court's order is irrelevant to this appeal as it is outside the record on which the California court's judgment is based (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 530; accord, *Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 958), notwithstanding the fact the San Diego court later judicially noticed the document.  As for M.M.'s December 2023 motion in the Montana court, C.S. asks us to take the motion as evidence and find Montana has exclusive continuing UCCJEA jurisdiction "as it pertains to [his] motion to dismiss."  Because we decline to dismiss the appeal as moot and remand the matter for further proceedings in the San Diego court, C.S. may ask that court in those proceedings to consider whether M.M.'s motion in the Montana court establishes M.M. has conceded the Montana court's exclusive UCCJEA jurisdiction.

The petition for rehearing is denied.

There is no change in judgment.

McCONNELL, P. J.

Copies to: All parties

Filed 5/21/24  M.M. v. C.S. CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE  OF CALIFORNIA


| | |
|---|---|
| M.M.,<br><br>        Appellant,<br><br>        v.<br><br>C.S.,<br><br>        Respondent. | D081628<br><br><br><br>(Super. Ct. No. 22FDV04321C) |


APPEAL from orders of the Superior Court of San Diego County, Olga Alvarez, Judge.  Reversed and remanded with directions.

Mazur & Mazur and Janice R. Mazur for Appellant.

Cage & Miles and John T. Sylvester for Respondent.

Appellant M.M. appeals from an order quashing service of a domestic violence restraining order (restraining order) petition that she brought against respondent C.S.  M.M. and C.S. have a minor child together and for a time lived together in the state of Montana.  After M.M. took the child to California and petitioned for the restraining order, C.S. moved to quash service, alleging the court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA; Fam.

Code,[1] § 3400 et seq.).  Following a conference with participation of both parties and the Montana judge, the San Diego court granted the motion and quashed service of the restraining order petition for lack of California UCCJEA jurisdiction.  Finding the child had not resided in California since March of 2020, the court ruled Montana was the "most appropriate state to exercise UCCJEA jurisdiction."

On appeal, M.M. contends the court erred by its determination, as the evidence established as a matter of law Montana is not the child's home state within the meaning of the UCCJEA, the court failed to assess certain factors in section 3421, subdivision (a)(2) as well as statutory factors of section 3427, and it deprived her of due process by denying her requests for an evidentiary hearing relating to UCCJEA jurisdiction and custody.  As we will explain, the court's ruling—which does not mention UCCJEA home state jurisdiction— indicates it determined California was an inconvenient forum and Montana was the "more appropriate forum" (§ 3427), without engaging in consideration of factors required by section 3427 of the UCCJEA.  Because we cannot imply findings to uphold the court's ruling, we reverse and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts were contested below, so we state them in the light most favorable to C.S., who prevailed on his motion to quash.  (*In re A.C.* (2017) 13 Cal.App.5th 661, 669-670; see also *Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1285, 1287.)  M.M. and C.S., who had a dating relationship, have a minor child together.  The child was born in February 2018 in San Diego.  In April 2020, the parties moved to Montana to be near

---

[1]     Undesignated statutory references are to the Family Code.

C.S.'s family and bought a house there.  M.M. and C.S. registered their cars, filed taxes and maintained their primary residence in Montana.

On September 7, 2022, M.M. sought and obtained in the San Diego Superior Court a temporary domestic violence restraining order against C.S. as well as an order awarding her legal and physical custody of their child, and denying C.S. visitation.  M.M. asserted that she had been staying with C.S. and his parents in Montana when she and C.S. got into an altercation over how to divide the proceeds of their recently-sold home, which she characterized as a joint investment.  According to M.M., C.S. became aggressive and violent—shouting obscenities in her face and swinging his fist hard at her, grazing her head and hitting their car—causing her to return to San Diego on September 4, 2022, assertedly in fear for her and their child's safety.  The San Diego court set the matter for an October 2022 hearing.

In late September 2022, C.S. specially appeared in the San Diego court and moved for an order quashing service of M.M.'s restraining order request on grounds the court lacked personal jurisdiction over him or subject matter jurisdiction over child custody and visitation.[2]  In an accompanying declaration, C.S. denied becoming violent or assaulting M.M., and stated that Montana had been the parties' and their child's resident state for the past 17 months, with extended trips with one or both parents to Brazil from September 8, 2020, to February 21, 2021, and again from November 14, 2021,

---

[2]     M.M. does not challenge the San Diego court's ruling concerning personal jurisdiction over C.S.

to April 23, 2022.[3]  He explained that once he learned M.M. had left Montana with their child, he filed a petition in the Montana court on September 8, 2022, resulting in an ex parte order adopting an interim parenting plan and requiring M.M. to return their child to Montana within 14 days.  C.S. asked that if the San Diego court were inclined to exert emergency jurisdiction, to contact the Montana judge for a UCCJEA conference given Montana was the UCCJEA home state and there was a pending action there relating to the child.

In response, M.M. contended California had UCCJEA jurisdiction to make an initial child custody determination because no other state had home state jurisdiction.  She argued the court was required to decide whether California had jurisdiction under section 3421 as "a more appropriate forum" than Montana under factors identified in section 3427.  M.M. also argued California remained the home state because the child was conceived and born in California, lived in California until April 2020, and spent temporary absences in both Montana and Brazil, the country where M.M.'s family is from.  M.M. submitted a declaration in which she stated that she and C.S. only lived in Montana temporarily and had always planned to return to

---

[3]     C.S. denied their stays in Brazil were relocations, stating:  "When we visited Brazil we continued to work our jobs in the U.S. remotely.  We continued to maintain our residence in Montana including continuing to pay our utilities and property taxes.  Our vehicles, furniture and furnishings, and personal assets all remained in Montana.  We continued to file our taxes in Montana.  [¶]  In addition, while in Brazil, we never rented or owned property, we always stayed with [M.M.'s] family.  We never worked in Brazil, we never rented or owned a car, we never paid taxes, we never opened bank accounts, or had local credit cards.  Every time we left to Brazil we had a mutual understanding that it was a temporary trip not a permanent relocation and we always intended to return to our residence in Montana and always did so after each trip.  We were never in Brazil for six months or more."

California. She also stated she and their child did not live in Montana for the last six months before she fled to California. According to M.M., she and the child spent significant time in Brazil; M.M. and C.S. hired a nanny there and the child attended a local school there. M.M. stated she and the child only lived in Montana from April 24, 2022, until the time she left for California on September 4, 2022. M.M. asked the court to continue the hearing to permit her to conduct discovery, and to set an evidentiary hearing to resolve the factual disputes related to UCCJEA jurisdiction, including whether the parties' time in Montana and Brazil were temporary absences from San Diego. She submitted a list of the names of ten witnesses who would testify regarding C.S.'s "intent [or plans] to return to San Diego."

In October 2022, the San Diego court conducted a conference call with the Montana court, the parties and their counsel in attendance. The San Diego court first recounted its understanding of where the parties and child lived, stating "[t]hey lived in Montana between April of 2022 to September of 2022. Then they lived in Brazil between November 2021 to April of 2022. Then again in Montana between February 2021 and November of 2021. And then in September of 2020 to February of 2021 in Brazil. Then in April of 2020 to August of 2020 in Montana. And then in San Diego from February 2018 to November of 2020 [*sic*]." The Montana court recounted what C.S. had set forth in his September 8, 2022 petition: "[C.S., M.M.], and the child lived in Helena, Montana from . . . September 2020 to August 2022; Brazil, . . . December 2021 to April of 2022; and there is an indication that says '[C.S. and M.M.] spent five months in Brazil visiting [M.M.'s] family,' . . . . 'They did not establish residency in Brazil[.]' And then from April 2020 to September 2020, they lived in Jefferson County, Montana; and then February 2018 to April 2020, they lived in San Diego, California." The Montana court

5

confirmed that on September 8, 2022, it had issued an order for an interim parenting plan and had set a hearing for October 2022.

The San Diego court then allowed the parties' counsel to speak, observing that the child had not lived in San Diego since March of 2020. After both courts reviewed California and Montana law, the Montana court based on C.S.'s Montana petition stated that "until August of 2022, [C.S., M.M.] and the child lived in Montana" and offered its view that Montana was the child's home state.[4] The Montana court stated, "[T]he question becomes whether the home state[ ] gives way," and asked counsel to address that point.

C.S.'s counsel confirmed that C.S. still resided in Montana. She explained why the evidence showed the parties' trips to Brazil were temporary absences, which did not take away from Montana's ability to exercise home state jurisdiction. In response, M.M.'s counsel asserted that there had been a "material misrepresentation in the Montana pleading," namely that the child had lived in Montana from December 2020 to August of 2022. He explained that because the time in Brazil was not a temporary absence, there was no home state under the UCCJEA, and thus the court had

---

[4] During this exchange, the San Diego court recognized M.M. and the child had been in San Diego since September 2022, but the last time they were in San Diego before that was March 2020. The court stated: "Then the second part of the statute is significant—there is a significant connection and substantial evidence. Can [the California court] exercise custody or jurisdiction? [¶] It says, 'No other state has home state jurisdiction or a court of the home state has declined to exercise its jurisdiction on the ground that California is the more appropriate forum.' [¶] So, I think, Judge [referring to the Montana court], that's where the Court is at this time with respect to its connection to Montana and significant connections." After that remark, the Montana court offered its position that Montana was the home state, and asked counsel to address whether it as the home state should give way.

6

to resolve the factual question of whether the child had significant connections to San Diego County. M.M.'s counsel pointed to M.M.'s declaration in which she set forth facts pertaining to the inquiry. He asserted the San Diego court had available to it substantial evidence of the child's care, protection, and personal relationships in San Diego. M.M.'s counsel asked the court in view of the factual dispute to grant M.M. an evidentiary hearing, and asked the court to accept his remarks as an offer of proof pending the hearing.

After considering further argument, the San Diego court ruled Montana was the "most appropriate state to exercise UCCJEA jurisdiction," finding "the child has not resided in California since March of 2020." It removed the child from the temporary protective order, and vacated the orders regarding visitation and custody.

The following day, the San Diego court convened the parties to clarify the stay it had granted pertaining to the restraining order. During that hearing, the court and parties again discussed M.M.'s request for an evidentiary hearing, and the court asked counsel for an "offer of proof as to why an evidentiary hearing should occur." Counsel responded: "There is substantial overlap in the facts regarding the motion to quash and the UCCJEA motion. I think under the UCCJEA motion, since it is a motion filed under [section] 3400, we're entitled under [section] 217, to that evidentiary hearing, absent some very specific findings by the court. And of those, the most important is there are disputed facts. As you look in the declarations, there's a lot of disputed facts regarding the UCCJEA issue. And again, we believe that the court should have given us the evidentiary hearing, you know, based on [section] 217."

In its later findings and order after hearing, the San Diego court found that section 217 "permits an evidentiary hearing when there is an order to show cause or notice of motion brought pursuant to the Family Code"; that the UCCJEA communication in October 2022 was not a hearing, but a "communication under . . . [section] 3410 in which the court allowed the parties to participate . . . ." (Bold omitted.) The court found good cause to deny the request for an evidentiary hearing relating to UCCJEA subject matter jurisdiction, ruling "there are no material facts in controversy . . . that the last time the child spent time in San Diego was in March of 2020" and the child "spent the rest of the time between then and now, as agreed upon by the parties, in Montana and Brazil with a nine month stay in Montana in 2021." (Bold omitted.) The court ruled there was no controverted issue, and thus no need to take live testimony to assess the parties' or witness credibility. It found M.M.'s offer of proof and submission of a witness list irrelevant.

M.M. appeals from the court's findings and order after hearing.[5]

## DISCUSSION

### I. *Motion to Dismiss*

C.S. moves to dismiss this appeal, arguing the matter is moot because the Montana court during the pendency of this appeal asserted UCCJEA jurisdiction and made custody determinations with respect to the child. He maintains Montana's assertion of jurisdiction bars California from asserting its jurisdiction, as "[t]he UCCJEA requires that only *one state* has jurisdiction to make child custody determinations at any one point in time." C.S. cites the proposition that "[w]here such a statutory scheme renders a court unable

___

[5] M.M. filed two notices of appeal, one from the court's October 2022 minute order, and a second from its December 2022 findings and order after hearing. This court assigned the same case number to the appeals.

8

to act in the manner requested by appellant, the appeal must be dismissed as moot."[6]

Faced with a similar argument in *Segal v. Fishbein* (2023) 89 Cal.App.5th 692, this court declined to dismiss an appeal on mootness grounds. In *Segal*, a father appealed a California court's order determining that Virginia would retain UCCJEA jurisdiction, and ruling the California court was without jurisdiction to modify or make custody orders. (*Id*. at p. 701.) In a motion to dismiss the appeal, the mother maintained that because she and the child were living in Virginia and the Virginia court had issued orders pending the appeal, this court could not grant any effectual relief and was required to dismiss the father's appeal as moot. (*Id*. at p. 702.) A panel of this court declined to do so, instead stating: "[W]hether we can still grant effectual relief to [the father] necessarily turns on whether the California family court properly concluded that California does not have jurisdiction over the custody dispute." (*Ibid*.)

---

[6] C.S. also asks us to take judicial notice of the Montana court's May 18, 2023 order issued while this appeal was pending in which that court ruled it had jurisdiction under both the UCCJEA and Montana law. He points out the San Diego court took judicial notice of the order in postjudgment proceedings. C.S. maintains the order is properly subject to judicial notice as a record of another court (Evid. Code, § 452, subd. (d)(2)), this court may judicially notice any matter noticed by the trial court (Evid. Code, § 459, subd. (a)(1)), and the order is relevant to whether M.M.'s appeal has been rendered moot by the Montana court's decision to exercise UCCJEA jurisdiction. We may take judicial notice of the records of "any court of this state." (Evid. Code, § 452, subd. (d)(1).) However, the Montana court's order is irrelevant to this appeal as it is outside the record on which the California court's judgment is based (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 530; accord, *Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 958), notwithstanding the fact the San Diego court later judicially noticed the document.

So it is here. As in *Segal*, "[b]ecause [C.S.'s] motion to dismiss necessarily implicates a review of the record and the merits of this appeal, we deferred ruling on it and instead will consider it together with the merits." (*Segal v. Fishbein*, *supra*, 89 Cal.App.5th at p. 702.) Dismissal is not appropriate since whether we can grant effective relief depends on the propriety of the San Diego court's ruling, which we address below.

II. *Reconsideration of Order Denying Request to Augment the Record*

At the time M.M. filed her opening appellate brief, she requested that the record be augmented to include exhibits—including an October 27, 2022 Helena Montana Police Department report—pertaining to the domestic violence incident involving C.S. M.M. had lodged some of those documents with the lower court in January 2023 in connection with her application for a stay of the court's UCCJEA jurisdiction order. We denied M.M.'s augmentation request on grounds the matters were lodged after issuance of the appealed-from orders.

At this court's invitation, M.M. seeks reconsideration of our order on grounds it is appropriate to augment the record under the "unusual circumstances presented here" in that the documents corroborate a September 2023 domestic violence incident that was the basis for a criminal charge against C.S. M.M. says the documents are "highly relevant to this appeal because they help to establish some of the evidence which would have been offered had the court not erroneously denied an evidentiary hearing" (some bold and underline omitted) and thus to show prejudice. She claims she would have been able to establish that "domestic violence has occurred and is likely to continue in the future" which is relevant to the court's decision as to whether California or Montana could best protect the parties

10

and child, assertedly a mandatory factor for the court's consideration under section 3427.

Augmentation "does not function to supplement the record with materials not before the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; see also *FCM Investments, LLC v. Grove Pham, LLC* (2023) 96 Cal.App.5th 545, 552; Cal. Rules of Court, rule 8.155(a)(1)(A).) "[N]ormally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.'" (*Vons Companies*, at p. 444, fn. 3.) Exceptional circumstances must exist to justify deviating from this rule. (*Ibid.*) Merely seeking to rebut an opponent's factual argument in a reply brief does not constitute exceptional circumstances. (*Ibid.* [request for a factual determination under Code of Civil Procedure section 909 to add documents not before the trial court in order to rebut factual claims concerning content of franchise agreements did not constitute exceptional circumstances]; compare *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 [courts consider postjudgment events such as legislative changes, events that render an issue moot, or undisputed facts that do not usurp the fact-finding function of the trial court and avoid repetitive litigation of fully briefed issues].)

Though she characterizes the circumstances as "unusual," M.M. does not cite authority expanding on what would constitute exceptional circumstances compelling us to find such circumstances here, where the proffered documents corroborate evidence (M.M.'s declaration) already in the record. M.M.'s request in substance asks us to take additional evidence on appeal and make independent factual findings. "Although appellate courts are authorized to make findings of fact on appeal . . . the authority should be

exercised sparingly.  [Citation.]  Absent exceptional circumstances, no such findings should be made."  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405; see also *Morgan v. Imperial Irrigation District* (2014) 223 Cal.App.4th 892, 912 [" 'Trial courts . . . are better situated to resolve questions of fact' "]; *In re L.B.* (2003) 110 Cal.App.4th 1420, 1423, fn. 1 [authority of appellate court to take new evidence " 'is to be used sparingly and has been narrowly construed' "].)  We decline to augment the record with the postjudgment evidence.

### III.  *UCCJEA Jurisdiction*

#### A.  *Legal Principles*

"It is well settled in California that the UCCJEA is 'the exclusive method of determining the proper forum in custody disputes involving other jurisdictions.' "  (*Segal v. Fishbein*, *supra*, 89 Cal.App.5th at p. 702; *In re A.C.*, *supra*, 13 Cal.App.5th at p. 668.)  One primary purpose of the UCCJEA is " 'to encourage states to respect and enforce the prior custody determinations of other states, as well as to avoid competing jurisdiction and conflicting decisions.' [Citation.]  To that end, '[t]he UCCJEA ensures that only one state has jurisdiction to make "child custody determinations" ' at any one time."  (*Segal v. Fishbein,* at p. 702.)  "[W]hen a California court is asked to make either an initial or a modified custody determination, UCCJEA jurisdictional requirements must be satisfied."  (*Ibid.*)  In such child custody proceedings, "subject matter jurisdiction . . . either exists or does not exist at the time the petition is filed, and jurisdiction under the UCCJEA may not be conferred by mere presence of the parties or by stipulation, consent, waiver, or estoppel."  (*In re A.C.*, at p. 668; see also *A.M. v. Superior Court* (2021) 63 Cal.App.5th 343, 350; *In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1040.)  M.M. points out, and C.S. does not dispute,

that Montana has adopted the UCCJEA (West's Mont. Code Ann. (2024) tit. 40, ch. 7, § 101 et seq.; *In re B.P.* (2008) 343 Mont. 345, 349).

California's UCCJEA "takes a strict ' "first in time" ' approach to jurisdiction." (*Segal v. Fishbein, supra*, 89 Cal.App.5th at p. 703; *In re Marriage of Fernandez-Abin & Sanchez, supra*, 191 Cal.App.4th at p. 1040.) "The general rule of the UCCJEA, subject to certain delineated exceptions, is that once the court of an appropriate state—that is, one having jurisdiction under its terms—has made an initial child custody determination, that court obtains exclusive, continuing subject matter jurisdiction over the child." (*A.H. v. Superior Court* (2023) 89 Cal.App.5th 504, 523.)[7] "[A] court 'has jurisdiction to make an initial child custody determination' if it is the child's home state." (*Segal v. Fishbein, supra*, 89 Cal.App.5th at p. 703, fn. 6, quoting § 3421, subd. (a)(1).) As relevant here, the child's home state is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding . . . [and a] period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g); *In re L.C.* (2023) 90 Cal.App.5th 728, 740.)

A court can alternatively exercise UCCJEA jurisdiction under a "significant connection" provision where (1) a court of another state does not have home state jurisdiction "or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more

---

7       A " ' "[c]hild custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term *does not* include an order relating to child support or other monetary obligation of an individual.' [Citation.] ' "Initial determination" means the first child custody determination concerning a particular child.' " (*A.H. v. Superior Court, supra*, 89 Cal.App.5th at p. 523.)

appropriate forum . . ." and (2) both of the following are true: "(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." (§ 3421, subd. (a)(2); see *In re A.C., supra*, 13 Cal.App.5th at p. 668.)[8]

"When a California court asserting temporary emergency jurisdiction is aware that a child custody determination has been made by another jurisdiction, the California court 'shall immediately communicate with the other court.' (§ 3424, subd. (d).) 'To make an appropriate order under the [UCCJEA], the California court needs to know whether the sister state court wishes to continue its jurisdiction and how much time it requires to take appropriate steps to consider further child custody orders.' [Citations.] 'The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.' (§ 3410, subd. (b).)" (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1097-1098.)

Further, a California court with UCCJEA jurisdiction to make a child custody determination may nevertheless decline to exercise it "if it determines that it is an inconvenient forum under the circumstances and

---

8    The two other alternative bases for a California court to make an initial child custody determination are where: "All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child" and "[n]o court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3)." (§ 3421, subd. (a)(3), (a)(4); see *In re A.C., supra,* 13 Cal.App.5th at pp. 668-669.)

14

that a court of another state is a more appropriate forum." (§ 3427, subd. (a).) Such an inconvenient forum argument may be raised on a party's or any court's own motion. (*Ibid*.) Before determining whether it is an inconvenient forum, the court must first consider whether it is appropriate for another state to exercise jurisdiction. (*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1319, citing § 3427, subd. (b).) In doing so, it " 'shall allow the parties to submit information' " and " 'shall consider' " and weigh relevant factors, including those enumerated in section 3427. (*Brewer*, at p. 1320, § 3427, subd. (b).)[9]

"On appeal, 'when the facts are contested, a trial court's jurisdictional finding under the UCCJEA is reviewed under the deferential substantial evidence standard. [Citations.] When conducting a substantial evidence review, we must review the entire record in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences in support of the family [or juvenile] court's findings. [Citation.] The family . . . court's resolution of conflicts in the evidence and credibility assessments are binding on this court. [Citation.]' [Citation.] In contrast, we review de novo, or

---

9    These factors include: "(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child. [¶] (2) The length of time the child has resided outside this state. [¶] (3) The distance between the court in this state and the court in the state that would assume jurisdiction. [¶] (4) The degree of financial hardship to the parties in litigating in one forum over the other. [¶] (5) Any agreement of the parties as to which state should assume jurisdiction. [¶] (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child. [¶] (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence. [¶] (8) The familiarity of the court of each state with the facts and issues in the pending litigation." (§ 3427, subd. (b); *Brewer v. Carter*, *supra*, 218 Cal.App.4th at p. 1319.)

independently, a . . . court's determination of jurisdictional facts based on undisputed evidence and its interpretation of statutes." (*In re A.C.*, *supra*, 13 Cal.App.5th at pp. 669-670, fn. omitted; see also *Schneer v. Llaurado*, *supra*, 242 Cal.App.4th at pp. 1285, 1287 [in reviewing a court's determination of UCCJEA jurisdiction, the appellate court does not "independently reweigh jurisdictional facts," rather it "generally must defer to the trial court's resolution of credibility and conflicts in the evidence"].)[10]

Finally, failure to "comply with the procedural requirements of the UCCJEA is subject to harmless error analysis. [Citations.] Before any judgment can be reversed for ordinary error, it must appear that the error complained of 'has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.) Reversal is justified " 'only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*In re Cristian I.*, *supra*, 224 Cal.App.4th at pp. 1098-1099.) The harmless error standard requires the appellant to show "merely a reasonable chance" of a more favorable outcome, which is "more than an abstract possibility." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715, italics omitted.)

B. *Contentions*

---

10 The court in *Schneer v. Llaurado*, *supra*, 242 Cal.App.4th 1276, declined to follow *In re Marriage of Fernandez-Abin & Sanchez*, *supra*, 191 Cal.App.4th 1015 and other authorities to the extent they stated that an appellate court "may independently reweigh the jurisdictional facts." (*Marriage of Fernandez-Abin*, at p. 1042; *Schneer*, at pp. 1284, fn. 2, 1285-1286.) A panel of this court in *A.M. v. Superior Court*, *supra*, 63 Cal.App.5th 343 more recently adopted *Schneer*'s standard of review. (*Id*. at p. 351.) We do as well.

16

Conceding that California was not the child's home state under the UCCJEA, M.M. contends the evidence was undisputed that Montana was *also* not the child's home state under the UCCJEA. Pointing to C.S.'s agreement that the child lived in Brazil from November 2021 through April 2022, M.M. maintains the child did not live in Montana for six consecutive months immediately before commencement of the action. According to M.M., because no home state existed, the California court was required to consider the subjective "significant connection" factors under section 3421, as well as factors to determine which state was the more appropriate forum under section 3427, and the court erred by failing to do so.

C.S. responds that the San Diego court properly complied with the UCCJEA, consulting with the Montana court and determining Montana was the "appropriate state to exercise UCCJEA 'home state' jurisdiction." He points out the Montana court did not decline jurisdiction, and there was evidence that the child's stays in Brazil were intermittent and did not constitute residency. C.S. maintains that the record contains factual disputes on whether Montana was the child's home state, as to which we apply the substantial evidence standard of review. He argues section 3427's inconvenient forum analysis does not apply since the San Diego court, which was not the child's home state, did not have initial jurisdiction to conduct such an analysis and the record contains no indication that inconvenient forum was raised by either the San Diego or Montana courts, or the parties by motion. He argues substantial evidence supports the court's implied finding that Montana was the more appropriate forum for UCCJEA jurisdiction.

17

C. *Analysis*

We conclude remand is necessary given the basis for the San Diego court's ruling. The court did not expressly rule that Montana was the child's home state for purposes of UCCJEA jurisdiction, which requires the child live with a parent at least six consecutive months immediately before the commencement of a child custody proceeding. The record contains substantial evidence from C.S.'s declaration that the child's times in Brazil were temporary absences, from which the San Diego court could conclude Montana was the child's home state, as temporary absences are included in the six-month period. (§ 3402, subd. (g).) But the San Diego court's remarks concerning the "significant connection" part of the UCCJEA suggest that it did not consider either state to be the child's home state. And its use of the specific phrase "most appropriate state" tracks the UCCJEA inconvenient forum provision, section 3427, indicating it considered California to be an inconvenient forum "and that [the Montana court] is a more appropriate forum . . . ." (§ 3427, subd. (a).)

C.S. says we must imply a finding that the court found Montana to be the UCCJEA home state., but we cannot do so where the court's analysis shows it believed there was no home state and thus the "significant connection" analysis applied (see footnote 4, *ante*), or that California was an inconvenient forum. We cannot imply findings if the court's reasoning otherwise is clear from the record (*Brewer v. Carter*, *supra*, 218 Cal.App.4th 1320 ["Where the record reflects what the court actually did . . . these presumptions [under the doctrine of implied findings] do not apply"]; *United Services Auto. Assn. v. Dalrymple* (1991) 232 Cal.App.3d 182, 186 [no findings to be implied where order expressed the trial court's legal conclusion]; see *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538,

18

1550 [ "[W]e are not compelled to resort to a presumption if the record adequately demonstrates the legal theory the court applied"].) Because the record indicates the court's ruling was based on no state being the child's home state and California being an inconvenient forum, we may not imply a finding that Montana was the child's home state.

C.S. also urges that the San Diego court could not have engaged in an inconvenient forum analysis because to do so, it must have had home state jurisdiction to release to the Montana court. In order to undertake an inconvenient forum analysis, a court must first have "jurisdiction under this part to make a child custody determination . . . ." (§ 3427, subd. (a).) The statute—which we interpret as a matter of law (*Schneer v. Llaurado, supra,* 242 Cal.App.4th at p. 1287)—does not specify *home state* jurisdiction as a condition precedent. Here, the San Diego court had entered a temporary restraining order at M.M.'s request before learning of the Montana proceedings. Upon learning of the Montana proceedings, it then contacted the Montana court as it was required to do under section 3424, which addresses temporary emergency jurisdiction to issue a child custody order. (§ 3424.) Temporary emergency jurisdiction is "jurisdiction under this part [the UCCJEA]." (§ 3427, subd. (a).) This was sufficient.

While the San Diego court was empowered to consider the inconvenient forum issue on its own motion (§ 3427, subd. (a)), it could only do so if it considered the required factors and allowed the parties "to submit information" (§ 3427, subd. (b)) on them. Subdivision (b) of section 3427 uses the word "shall," making the procedure mandatory. "The court has broad discretion with respect to weighing the applicable [inconvenient forum] factors and determining the appropriate weight to accord to each. However, the court cannot ignore any relevant circumstance enumerated in section

19

3427, subdivision (b); rather, the trial judge must recognize and apply each applicable statutory factor." (*Brewer v. Carter*, *supra*, 218 Cal.App.4th at p. 1320.) In *Brewer*, the trial court "raised the inconvenient forum issue on its own motion" without providing the parties "an opportunity to submit evidence relevant to the court's determination of whether California was a convenient forum or Illinois was an appropriate forum." (*Id.* at p. 1319.) The appellate court agreed that "in the absence of evidence, the [trial] court could not consider and apply the statutory factors set forth in section 3427" (*ibid.*), and thus the court had erred by staying the California proceedings. (*Ibid.*) "Without the parties having had an opportunity to submit evidence on the inconvenient forum issue and lacking any evidence in the record that California is an inconvenient forum or Illinois is a more convenient forum to resolve the parties' custody issues, we decline to presume the trial court made the factual findings necessary under section 3427." (*Id.* at p. 1320.) The *Brewer* court reversed and remanded the matter for further proceedings. (*Ibid.*)

Here, the San Diego court had before it some evidence of one of the factors (as to domestic violence), but it did not say it was analyzing all of the listed factors nor did it appear to undertake a review of those factors, at least expressly. Another one of the factors—the distance between the courts of each state—could have been the subject of judicial notice (Evid. Code, § 452, subd. (h) [permitting judicial notice of facts that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy]), but the court did not rule or suggest it was taking judicial notice of that matter. Even if on this silent record we were to imply findings on these issues, not all of them are supported by substantial evidence. (See *Brewer v. Carter*, *supra*, 218

20

Cal.App.4th at p. 1320 [each implied finding on the section 3427 inconvenient forum factors must be supported by substantial evidence].)

As we have stated, where a court does not comply with procedural requirements of the UCCJEA, that error is subject to harmless error analysis. (*In re Cristian I.*, *supra*, 224 Cal.App.4th at pp. 1098-1099.) In response to the court's request for an offer of proof as to what an evidentiary hearing as to subject matter jurisdiction would show, M.M.'s counsel did not set out any specific evidence; he just pointed to the declarations and said, "there's a lot of disputed facts regarding the UCCJEA issue." Had this been M.M.'s only showing, we would hold M.M. has not shown how the court's failure to take evidence or conduct an evidentiary hearing on the inconvenient forum issue resulted in a miscarriage of justice. (See Cal. Const., art. VI, § 13; accord, *Segal v. Fishbein*, *supra*, 89 Cal.App.4th at pp. 708-709 [party "failed to explain with specificity, either in the trial court below or in his briefing on appeal, how cross-examining Segal about her declaration would have related to the issues underlying the California court's jurisdictional ruling"].)

But M.M. has proffered additional evidence in her appellate brief.[11] Under the circumstances and recognizing the importance of the issues presented in child custody matters, we reverse the order and remand for further proceedings. On remand, the court may clarify that it was deciding the question of home state jurisdiction. If the San Diego court intended to rule that Montana was the child's home state under the UCCJEA, then (as we explain below) M.M. may renew her request that the court grant her an evidentiary hearing with an offer of proof on that issue, or she may submit the proffered evidence to support her argument that California is the child's home state.

If the court intended to address whether California is an inconvenient forum and Montana is the more appropriate forum, it must consider and

_____

[11] On appeal, M.M. states that "[h]ad an evidentiary hearing been held, [she] would have presented, among other evidence, that prior to the [domestic violence] incident on September 3, 2022, [C.S.] had already purchased one way airline tickets for herself, [C.S. and their child], to fly to San Diego just after the close of escrow on their Montana property, thereby establishing their intent to return as well as refuting [C.S.'s] claim made to the Montana court that she 'abducted' [their child] . . . by returning to San Diego a very short time after they were scheduled to go there." (Bold and underline omitted.) She states she would have cross-examined C.S. "regarding the parties' intentions when they first went to Montana and their intentions after they sold their property in Montana," which is "highly relevant" to the question of whether their move to Montana was a temporary absence under section 3402. In *In re Aiden L.* (2017) 16 Cal.App.5th 508, the court stated a ruling on temporary absence under the UCCJEA entails an evaluation of the parents' intentions, "as well as other factors relating to the circumstances of the child's or family's departure . . . ." (*Id.* at p. 518.) The court may consider the parties' reasons for leaving California and their plans once they arrived in Montana, including whether they discussed moving back to California and other circumstances of the parties' ties to both states. (Accord, *id.* at p. 521.) Given our decision to remand the matter, M.M. may present such evidence or make a more specific offer of proof to the court below.

permit the parties to present evidence on all of the factors under section 3427, subdivision (b).  (*Brewer v. Carter*, *supra*, 218 Cal.App.4th at pp. 1320-1321.)

IV.  *Entitlement to Evidentiary Hearing*

Because we remand for further proceedings as stated above, we address M.M.'s claim that she is entitled under section 217 and California Rules of Court, rule 5.113 to an evidentiary hearing on the disputed facts relating to custody and UCCJEA jurisdiction.  According to M.M., under these provisions, the court in a jurisdictional UCCJEA proceeding " 'shall receive any live, competent testimony that is relevant and within the scope of the hearing' unless the court makes 'a finding of good cause to refuse to receive live testimony' and states its reasons for the finding on the record or in writing."

Section 217, subdivision (a) provides:  "At a hearing on any order to show cause or notice of motion brought pursuant to [the Family Code], absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties."  Subdivision (b) of the statute provides:  "In appropriate cases, a court may make a finding of good cause to refuse to receive live testimony and shall state its reasons for the finding on the record or in writing."  Here, the San Diego court found the communication with the Montana court was not a hearing within the meaning of section 217, and also that there was "no need for [it] to take live testimony to assess the credibility of the parties or other witnesses when there is no controverted issue."

We conclude the court's discussion with the Montana court was

23

a "hearing on any . . . notice of motion brought pursuant to [the Family Code] . . . ." (§ 217, subd. (a).)  The San Diego court conducted the UCCJEA-required call in connection with C.S.'s noticed motion to quash for lack of UCCJEA subject matter jurisdiction.  Thus, on remand, M.M. may renew her request for an evidentiary hearing under section 217.  The court may revisit its good cause determination under the statute.  We observe M.M. had presented a witness list of persons who would testify as to C.S.'s intent or plans to return to San Diego, as well as a declaration describing connections between the child and California, which M.M. sought to introduce on what she asserts are subjective factors relevant to "significant connection" home state jurisdiction.  As noted, M.M. has also made an offer of proof on appeal relevant to the issue of the parties' temporary absences.  (Compare *Segal v. Fishbein, supra,* 89 Cal.App.5th at p. 708 [party "failed to explain with specificity, either in the trial court below *or in his briefing on appeal*, how cross-examining [the other party] would have related to the issues underlying the California court's jurisdictional ruling" (italics added)].)  C.S. argues that if section 217 applies, the court properly exercised its discretion to deny M.M.'s request for an evidentiary hearing because the material facts as to the child's time in San Diego, Montana and Brazil were uncontroverted, as was the evidence showing California was not the child's home state.  But there is controverted evidence on the parties' intent relevant to whether the stays in Montana and Brazil were temporary absences.  Though C.S. points out M.M. did not elaborate below on what factual disputes were present or give an offer of proof as to the substance, purpose and relevance of C.S.'s cross-examination on her UCCJEA arguments, M.M. has now done so on appeal.

## DISPOSITION

The order is reversed and the matter remanded for further proceedings consistent with this opinion.  The parties shall bear their own costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.