Filed 4/29/25  In re K.Q. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re K.Q. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>F.C.,<br><br>    Defendant and Appellant. | G064669<br><br>(Super. Ct. No. 23DP0915-23DP0916)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on April 10, 2025, be modified to add the phrase "and all subsequent orders" to the final sentence of the opinion. The final sentence of the opinion will now read: "If, on the other hand, the court finds it has jurisdiction, or that Peru has jurisdiction but declines to exercise it, the court's jurisdiction and disposition and all subsequent orders shall be reinstated."

Respondent Orange County Social Services Agency's petition for rehearing filed April 24, 2025 is denied.


                              GOODING, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


MOTOIKE, J.


2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.Q. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>F.C.,<br><br>    Defendant and Appellant. | G064669<br><br>(Super. Ct. No. 23DP0915, 23DP0916)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Robert Goodkin, Judge. Conditionally reversed and remanded.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the minor children.

\*          \*          \*

The issue before us involves the obligations imposed on a juvenile court under the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.) (UCCJEA) when the court is aware another country may have jurisdiction over the children involved. Appellant F.C. (Mother) and her two minor sons, Ko.Q. (then 14 years old) and Ke.Q. (then 13 years old) (collectively, the children), moved from Peru to California in May 2023. Just over three months later, the Orange County Social Services Agency (Agency) filed a petition seeking to have the children declared dependents of the court. At the initial hearing, the Agency informed the court Peru may have jurisdiction over the children and offered to attempt to locate a court in Peru for the juvenile court to contact. For more than a year, the Agency attempted to identify a court in Peru by reaching out to the Peruvian Consulate in Los Angeles, contacting a Peruvian attorney whose name was provided by the Peruvian Consulate, and communicating with an organization in Peru identified by that attorney. None of the Agency's attempts provided any substantive information, and the court did not follow up on any of the Agency's efforts.

While attempting to locate the boys' father (Father), the Agency learned Father was involved in an ongoing divorce proceeding in Peru. Mother and Father's marital relationship was unclear. Mother had informed the Agency she and Father were still married but had also reported Father had remarried and had a new family. If Father was in the process of divorcing Mother in Peru and that proceeding was commenced before the

2

child welfare proceeding commenced in California, Peru would have jurisdiction over the children and the California juvenile court could not exercise anything other than emergency jurisdiction. (Fam. Code, § 3426.) Although the Agency notified the court of a potential divorce proceeding in Peru, the record does not reflect any attempt by either the Agency or the court to determine if the proceeding involved Mother or the children.

Without reaching out to any of the entities or agencies identified by the Agency or following up on the potential divorce proceeding, the juvenile court found Peru declined jurisdiction by failing to substantively respond to the Agency's attempted communications and determined California had jurisdiction over the children under the UCCJEA. We conclude that determination was premature. We therefore conditionally reverse the juvenile court's jurisdiction and disposition orders and remand for further proceedings.

FACTS

I.

COMMENCEMENT OF THE CHILD WELFARE PROCEEDINGS

In May 2023, Mother moved with the children and their adult sister, H.Q., from Peru to California. Upon arrival in California, the family moved in with D.P., Mother's oldest child and the adult half-sister of Ko.Q., Ke.Q., and H.Q. D.P. had lived in the United States for about 10 years.

In early August 2023, the police were called three times to D.P.'s home for domestic dispute incidents. The children told the police Mother had physically abused and inappropriately disciplined them for years. The physical abuse included Mother hitting them on the face with her hand, beating them with objects such as a wooden stick and a belt, throwing shoes

3

and bottles at them, and withholding food from them. They also reported Mother had punished them with insults and humiliation.

After the third visit from the police, Mother left D.P.'s home. The children, however, refused to leave with Mother and remained at D.P.'s home. They were taken into protective custody two days later and placed with D.P.

On August 25, 2023, the Agency filed a child welfare petition, alleging the children came within the jurisdiction of the juvenile court under Welfare and Institutions Code section 300, subdivisions (a), (b), (c), and (g). Three days later, a hearing was held, and the children were detained from Mother's custody pending further proceedings.

## II.

### FATHER

The Agency was not able to obtain much information regarding Father. According to reports filed by the Agency, Father reportedly lived in Peru, but his specific location was unknown. The Peruvian Consulate reported it was unable to locate any Peruvian citizen with Father's name and birth date. During the child welfare proceeding, however, Ke.Q. testified that, according to Mother, Father had moved to Chile. There was no testimony or other information provided about when (if at all) Father moved to Chile or where in Chile he was (or might be) living.

The information provided to the Agency regarding Mother and Father's marital relationship also was conflicting. Mother reported to the Agency she and Father were still married and had not divorced, but also told the Agency Father was remarried and had a new wife. The children did not

4

live with Father in the years before they moved to the United States, and Father had limited involvement in their lives.

The Agency made multiple attempts to contact Father but was unsuccessful until late February 2024, when the Agency contacted an attorney in Peru, who stated he represented Father in a current divorce case. The attorney reported he understood Father had authorized Mother to take the children to Mexico and stated he would ask Father to contact the Agency. The same day, Father sent a text to the Agency stating he had spoken with his attorney and wished Mother to have legal custody of the children. Father did not respond to subsequent messages left by the Agency.

The counsel appointed for Father early in the proceeding also had difficulty contacting Father. In April 2024, he told the juvenile court he had only been able to speak with Father once and, during that conversation, Father relayed he was upset an attorney had been appointed for him and he did not want to participate in the child welfare proceeding. Father did not respond to his appointed counsel's subsequent attempts to contact him.

III.

THE AGENCY'S ATTEMPTS TO IDENTIFY A COURT IN PERU WITH POSSIBLE JURISDICTION OVER THE CHILDREN

At the initial hearing in August 2023, the Agency's counsel notified the juvenile court of possible jurisdictional issues under the UCCJEA: "Given the fact that the family has only been in the United States for three months, we have possible [UCCJEA] issues. I would ask the Court set a progress review on September 13th. The [A]gency can investigate further what court, if any, would possibly have additional information on the family's involvement with any system in Peru and provide that information to the court . . . ." The court exercised emergency jurisdiction over the

5

children and asked the Agency to pass along any information regarding the family's involvement with any proceeding in Peru.

At a progress review hearing in October 2023, the Agency informed the juvenile court that between September 13, 2023, and October 2, 2023, County Counsel had sent five inquiries to the Peruvian Consulate on the issue of UCCJEA but had not received a response. At the next hearing, later that month, the Agency informed the court it was still awaiting a response from the Peruvian Consulate. The court's minute orders do not reflect any discussion of the jurisdictional issue at any of the 14 hearings held between November 2023 and September 4, 2024.[1]

Although the minute orders are silent on the issue of jurisdiction, the addendum reports filed by the Agency reflect its continued attempts at communication to identify a court in Peru that might have jurisdiction over the children. In December 2023, the Consulate told the Agency it could not make decisions for children under the UCCJEA and provided the Agency contact information for an attorney in Peru. The Agency contacted the attorney, who in turn gave it an email address for what he referred to as the Judicial Office of International and Extraditions in Peru (JOIE). The Agency sent an email to JOIE and received a responsive email acknowledging receipt and promising to forward the email to the "person in charge of requests from the United States." The Agency sent four follow-up emails to JOIE, each of which prompted the same response, but the Agency never received any substantive response or information from JOIE or anyone else.

---

[1] At least six of those hearings were evidentiary hearings at which Mother, Ko.Q., Ke.Q., and/or H.Q. testified. Ke.Q. testified on May 14 and June 4, 2024; Ko.Q. testified on June 4 and 18, 2024; H.Q. testified on July 8 and August 6, 2024; and Mother testified on August 20, 2024.

## IV.

### THE JUVENILE COURT'S UCCJEA FINDING

On September 5, 2024, based on a presumption Peru had jurisdiction over the children and a determination Peru had declined to exercise that jurisdiction based on the lack of any substantive response by Peruvian authorities to the Agency's communications, the juvenile court found California could exercise jurisdiction over the children under the UCCJEA. Its order states: "The Court will assert jurisdiction under UCCJEA. For over a year, there have been repeated requests to contact the court[2] in Peru. The court in Peru has not responded and not asserted jurisdiction in any way. [¶] Additionally, [Mother, the children and their older sister] testified both about their life in the United States, as well as their life in Peru. All four of the witnesses at different points in time discussed Peru. None discussed ever going to any type of court hearings in Peru. . . . [¶] So based on the repeated efforts over the last year to contact the Peruvian courts, as well as the testimony during the trial, the Court finds that Peru has declined to assert any type of jurisdiction and this Court will."

Counsel for Mother objected to the exercise of jurisdiction under the UCCJEA: "For the record, I would be lodging an objection to the Court exerting jurisdiction based on UCCJEA."

The juvenile court found the allegations of the child welfare petition true by the preponderance of evidence, bringing the children within Welfare and Institutions Code section 300, subdivisions (a), (b)(1), and (g).

---

[2] The record does not reflect any attempt to contact a *court* in Peru. The only attempts shown involve attempted communications with the Peruvian Consulate, an attorney identified by the Consulate, and JOIE, an entity identified by the Peruvian attorney.

7

The court found by clear and convincing evidence Welfare and Institutions Code section 361, subdivisions (c)(1) and (5) applied and, accordingly, removed the children from Mother's custody. Mother timely appealed.

## DISCUSSION

## I.

## THE UCCJEA

"The UCCJEA is the exclusive method in California to determine the proper forum in child custody proceedings involving other jurisdictions. [Citation.] A [child welfare] action is a "'child custody proceeding'" subject to the UCCJEA. [Citations.] The purposes of the UCCJEA in the context of [child welfare] proceedings include avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody where child and family have closest connections, avoiding relitigation of another state's custody decisions, and promoting exchange of information and other mutual assistance between courts of other states." (*In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1348.) "The UCCJEA ensures that only one state has jurisdiction to make 'child custody determinations.'" (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037.) A foreign country is treated as a state of the United States under the UCCJEA. (Fam. Code, § 3405 , subd. (a).)[3]

Pursuant to section 3421, subdivision (a), California may *only* exercise jurisdiction over a child in one of four situations: (1) California is the child's home state (home state jurisdiction) (*id*., subd. (a)(1)); (2) there is no home state, or the home state has declined to exercise jurisdiction and the

---

[3] All further undesignated statutory references are to the Family Code.

8

child and at least one parent have a significant connection with California (significant connection jurisdiction) (*id.*, subd. (a)(2)(A)); (3) all courts having either home state or significant connection jurisdiction have declined to exercise jurisdiction (*id.*, subd. (a)(3)); or (4) no court has jurisdiction over the child under any of the prior scenarios (*id.*, subd. (a)(4)). Even if a California court has jurisdiction under section 3421, it is not required to exercise that jurisdiction if it determines another court is a more appropriate forum. (§ 3427, subd. (a) ["A court of this state that has jurisdiction under [section 3421] may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum"].)

Further, pursuant to section 3426, subdivision (a), California "may not exercise its jurisdiction under this chapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under Section 3427 [governing the inconvenient forum process in UCCJEA proceedings]."

When the juvenile court's jurisdictional findings are based on contested facts, we review the findings for substantial evidence. If, however, the court's jurisdictional findings are based on undisputed facts or statutory interpretation, we review the findings de novo. (*In re A.C.* (2017) 13 Cal.App.5th 661, 669–670.)

9

As set forth below, the record before this court does not support the juvenile court's exercise of jurisdiction without further inquiry.[4]

### III.

### JURISDICTION

*A. Home State Jurisdiction*

A court has home state jurisdiction when it is the child's home state on the date of the commencement of the proceeding." (§ 3421, subd. (a)(1).) "'Home state' means the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).)

The children lived in California for less than four months before the commencement of the child welfare proceeding. Because they did not live in California for six consecutive months before the child welfare proceeding began, California is not their home state under this test. Similarly, Peru does

---

[4] The Agency concedes Mother made a general objection to the juvenile court's exercise of jurisdiction under the UCCJEA. The Agency argues, however, that the general objection was not sufficient to preserve the specific ground raised by this appeal, i.e., that the juvenile court failed to comply with the UCCJEA because it did not attempt to contact any Peruvian court. Even presuming the general objection was not sufficient to preserve the specific objection, allowing forfeiture on this record would be inconsistent with the UCCJEA, which specifically limits the bases under which jurisdiction may be exercised. (*In re L.C.* (2023) 90 Cal.App.5th 728, 739 ["We are confident the Legislature did not go to the trouble of adopting such a carefully designed and comprehensive scheme only to permit courts, under the auspices of forfeiture, effectively to add a fifth, unspecified category to the statute, one which permits a court to exercise jurisdiction regardless of the location of the child's home state or the preferences of a foreign court simply because the parties before it do not object"].) We find no waiver.

10

not have home state jurisdiction based on the children's residency because they left Peru in April or May 2023—more than three months before the commencement of the child welfare proceedings.

Because the children did not live anywhere for six consecutive months before the child welfare proceeding was initiated, they had no home state under the UCCJEA based on their residency. (See *In re Jaheim B., supra,* 169 Cal.App.4th at p. 1350 [minor born and raised in Florida who moved to California five months before he was taken into protective custody had no home state under UCCJEA].)

Home state jurisdiction is also available when a child is no longer in the state, but lived there at some time during the six months before the child welfare proceedings were commenced *and* a parent or person acting as a parent still lives in the state. (§ 3421, subd. (a)(1) [a state has home state jurisdiction if it "was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as parent continues to live in this state"].) Because this theory addresses only those situations where the child has left the state, it does not give California home state jurisdiction because the children still live in California.

If Father still lived in Peru at the time the child welfare proceeding was commenced, Peru might have home state jurisdiction under this theory because the children lived in Peru at some point during the six month period before the child welfare proceeding was commenced and left Peru, but Father remained there. (§ 3421, subd. (a)(1).) The evidence before the juvenile court, however, was not sufficient to establish that Peru had home state jurisdiction based on Father's residency there. Mother told the Agency Father lived in Peru, but Ke.Q. testified before the court that Mother

11

told him Father had moved to Chile. It was not clear whether Father lived in Peru or Chile at the time the child welfare proceeding was commenced or thereafter and the record does not reflect any attempt, either by the court or the Agency, to determine whether Father had moved to Chile and, if so, when he moved and whether the move was temporary or permanent. Father's residency is critical to the determination of whether Peru had home state jurisdiction over the children.

## B.  Significant Connection Jurisdiction

A court also may have jurisdiction over a child welfare proceeding through significant connection jurisdiction. Significant connection jurisdiction exists when (1) there is no home state or the home state has declined to exercise jurisdiction *and* (2) "[t]he child and the child's parents, or the child and at least one parent or person acting as a parent, have a significant connection with [the state seeking to exercise jurisdiction] other than mere physical presence" *and* "[s]ubstantial evidence is available in [the state] concerning the child's care, protection, training, and personal relationships." (§ 3421, subd. (a)(2).)

Even assuming the first prong of the test was met, either because the children had no home state or because Peru had home state jurisdiction and declined to exercise it, the evidence before the juvenile court does not satisfy the second prong of the significant connection jurisdiction test. The court received evidence that Mother, who lived in Peru prior to May 2023, intends to return to Peru as soon as the child welfare proceeding is completed. That does not suggest Mother has a significant connection to

12

California. There is no evidence establishing Mother had any significant connection to California other than her mere physical presence in the state.[5]

Uncertainty about Father's residency also affects whether Peru might have significant connection jurisdiction because such jurisdiction requires that "at least one parent or a person acting as a parent, ha[s] a significant connection" with Peru. (§ 3421, subd. (a)(2)(A).) If Father has permanently moved to Chile, that would suggest he did not have a significant connection with Peru. Again, however, the evidence before the juvenile court is insufficient to determine whether Peru has significant connection jurisdiction.

C. *Alternative Grounds for Jurisdiction*

With no showing of either home state or significant connection jurisdiction, California could only exercise jurisdiction over the children if another court shown to have such jurisdiction had declined to exercise it (§ 3421, subd. (a)(3)) or if no court anywhere had jurisdiction over the children (*id.*, subd. (a)(4)). In exercising jurisdiction over the children, the juvenile court presumed Peru had jurisdiction over them and had declined to exercise that jurisdiction by failing to respond to the Agency's inquiries. As set forth above, the evidence before the court was not sufficient to establish

_____

[5] D.P.'s presence in and connection to California does not provide significant connection jurisdiction over the children in California. D.P. is not a "person acting as a parent" because she did not have physical custody of the children before the commencement of the child welfare proceeding. (§ 3402, subd. (m) ["'Person acting as a parent' means a person, other than a parent, who: (1) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of the child custody proceeding; and (2) has been awarded legal custody by a court or claims a right to legal custody under the law of the state"].)

13

Peru had either home state or significant connection jurisdiction over the children

Further, even if California had jurisdiction over the children under any of the tests, it could not exercise such jurisdiction if a proceeding concerning custody of the children had been commenced in another state before the child welfare proceeding in California began. (§ 3426, subd. (c).) During the child welfare proceedings, Father's Peruvian counsel told the Agency Father was involved in a divorce proceeding. If Father was seeking a divorce from Mother, that divorce proceeding may well have involved the children and custody issues concerning them. Although both the Agency and the court were notified of the potential divorce proceeding in Peru, no efforts were taken to determine whether that proceeding affected the children.

Both Father's attorney and Mother could have been asked for details about the divorce proceeding, including, e.g., in what court and city or province it was pending, the case number, and the name of the judicial officer—and whether it was a divorce proceeding involving Mother. Even if it were determined there was no *pending* divorce or custody proceeding that might affect the children, Mother could have been asked about any other legal proceeding, current or former, involving the children.[6]

The Agency or the juvenile court also could have asked the children directly about any legal proceedings they were aware of that might involve them or Mother and Father. They were not infants or young children when the child welfare proceeding was commenced. It is reasonable to believe

---

[6] Mother testified under oath in at least one evidentiary hearing held by the juvenile court, on August 20, 2024. The record shows none of these questions were asked of her.

14

that, as teenagers, they might have knowledge of the existence or status of any legal proceedings in Peru involving them or their parents.

The Agency or the juvenile court could even have directed inquiries to Mother's adult daughters, D.P. and H.Q., about their knowledge of current or prior legal proceedings in Peru involving Mother or their brothers. Although H.Q. testified at two of the evidentiary hearings before the juvenile court, the record reflects no such questions were directed to her; and there is no record of anyone asking D.P. what, if anything, she knew about legal proceedings in Peru that might involve or affect Mother or D.P.'s half-brothers.

"[W]here the information before a juvenile court objectively suffices to raise a genuine question about whether another jurisdiction is the child's home state, a juvenile *court* must obtain additional information as necessary to make a home state determination—and is empowered to contact the *court* in the other jurisdiction to that end." (*In re L.C., supra,* 90 Cal.App.5th at p. 737, italics added.) The juvenile court had knowledge that Peru might have jurisdiction but failed to further inquire into the matter or make any attempt to contact a Peruvian court regarding the issue. We do not necessarily fault the juvenile court for permitting the Agency to do the leg work at the outset—i.e., to undertake initial inquiries to attempt to determine facts relevant to potential Peruvian jurisdiction and to locate a court in Peru for the juvenile court to contact. Given the court's limited resources, this may be a reasonable first step. But, when the Agency was unsuccessful in its attempts and the court had reason to believe there might

15

be pending proceedings in Peru that involved the children, the court should have followed up with communications to JOIE or the Consulate on its own.[7]

Both the Agency and the juvenile court had access to readily available sources of information that might have shed light on whether Peru had jurisdiction over the children. Without ensuring inquiries had been made to these sources, the juvenile court could not properly conclude Peru had jurisdiction or Peru had declined to exercise its jurisdiction—the very bases on which the court elected to exercise jurisdiction.

D. *Harmless Error*

The Agency argues any error in complying with the UCCJEA was harmless. (*In re A.C., supra,* 13 Cal.App.5th at p. 673 [procedural errors under the UCCJEA are subject to harmless error analysis].) We cannot agree. As noted above, there is reason to believe a divorce proceeding may be pending in Peru between Father and Mother, which in turn raises the possibility (if not likelihood) that custody of the children is at issue in a Peruvian legal proceeding.

Further, a California court "may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination" under home state or significant connection jurisdiction and certain determinations are made. (§ 3423.) A custody order by a California court would not be harmless if it contradicted a custody determination in the divorce proceedings in Peru.

For these reasons, we remand this matter with directions to the juvenile court to take further steps to inquire into Father's residency, the

---

[7] We cannot dismiss the possibility that an inquiry directly from a judicial officer would be more likely to elicit a substantive response than a communication from an administrative agency.

16

divorce proceeding, and whether Peru wishes to decline its jurisdiction, if any. (*In re A.M.* (2014) 224 Cal.App.4th 593, 599–600.)

## DISPOSITION

The juvenile court's jurisdiction and disposition orders are conditionally reversed, and the matter is remanded for further proceedings consistent with this opinion to determine whether Peru has jurisdiction under the UCCJEA and, if so, whether Peru declines such jurisdiction. If Peru has jurisdiction and does not decline, the court's orders shall remain reversed. If, on the other hand, the court finds it has jurisdiction, or that Peru has jurisdiction but declines to exercise it, the court's jurisdiction and disposition orders shall be reinstated.

GOODING, J.

WE CONCUR:

SANCHEZ, ACTING P. J.

MOTOIKE, J.