Filed 1/15/26  In re S.D. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.D. et al., Persons Coming Under the Juvenile Court Law. | B341606<br><br>(Los Angeles County Super. Ct. No. 24CCJP01755A–D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>L.D.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Mauricio J. Fusco, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Appellant L.D. (mother) appeals from juvenile court jurisdictional findings and dispositional orders sustaining a petition filed under Welfare and Institutions Code section 300 and asserting dependency jurisdiction over her four minor children, S.D., J.D., C.I., and J.R.[1]  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 13, 2023, the Department of Children and Family Services (DCFS) received a report that mother hit S.D. in the face.  A school staff member observed that S.D. had a black eye.  The referral was deemed substantiated, but the case was closed because mother declined services.

On April 11, 2024, DCFS received a referral alleging that mother physically abused J.D.  According to the referral, mother found J.D. watching television in mother's room and began to yell at the child.  Mother threatened to hit J.D., counted to three, and then used her fist to hit J.D. on her head, back, and arm.  Mother then grabbed the child's hair and "took her to the ground."  J.D. reported that mother said she would " 'kill her' " during the altercation and at least five or six times in the past.  J.D.'s adult sibling, E.D., broke up the fight.  J.D. left the home and walked

———————————

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

2

around for about 10 minutes, then knocked on a stranger's door, who happened to be a social worker.

J.D. also reported that mother hit her in the face earlier that year during another dispute. When J.D. ran away, mother pursued her and hit her again.

A DCFS social worker interviewed the family about the incident. J.D. stated that mother found her watching cartoons, and when mother asked her to leave the room, mother grabbed her hair and hit her face two or three times. Mother said that she found J.D. "watching cartoon porn" and "pushed" her out of the room. Mother accused J.D. of lying and denied that she hit the child. E.D. reported that mother questioned J.D. but did not hit her. S.D. and C.I. did not witness the incident, and J.R. was too young to be interviewed.

During the interviews, S.D. described the incident that led to the November 2023 referral. S.D. said that she told mother that she did not like how J.R.'s father treated mother, because he was verbally abusive. The disagreement "escalated into a physical altercation" during which mother gave S.D. a black eye. C.I. reported a previous fight between S.D. and mother as well. According to C.I., S.D. yelled at mother and threw a marker at her face, and then they began to physically fight. C.I. did not recall who started the fight or how it ended. J.R.'s father, who also witnessed the November 2023 incident, believed that S.D. attacked mother.

Maternal grandmother did not believe mother hit J.D. because "she does not hit any of her children." Maternal grandmother also did not believe that mother gave S.D. a black eye in November 2023.

On June 6, 2024, DCFS filed a section 300 petition alleging that mother had physically abused J.D. and S.D.; that this abuse endangered those two children's physical health, safety, and well-being; and that the abuse placed siblings C.I. and J.R. at risk of serious physical harm, damage, and physical abuse. The petition specifically alleged that mother struck J.D. in April 2024 and on four prior occasions and that she struck S.D. in November 2023, causing a black eye.

In July 2024, a DCFS social worker interviewed J.D. again about the case. J.D. denied that mother ever hit her and asserted that the allegation was "not true at all." The social worker also interviewed mother and E.D., who both again denied that mother had hit J.D. in April 2024.

The social worker also interviewed S.D. in July 2024, who again reported that mother gave her a black eye during a fight. Mother admitted to the social worker that S.D. "got a black eye."

At the August 27, 2024 adjudication and disposition hearing, the juvenile court sustained the petition and declared all four children dependents of the court. It found that releasing the children to mother would not be detrimental to their safety and ordered them released to mother.

Mother timely appealed from the August 27, 2024 orders.

## DISCUSSION

### I. Mootness and reportability of conduct for inclusion in the Child Abuse Centralized Index (CACI)

We previously granted respondent's request for judicial notice of orders terminating jurisdiction over all four children and placing them with mother. (Evid. Code, § 452, subd. (d)(1) [courts may take judicial notice of records of courts of this state].) We

4

invited mother to submit a supplemental letter brief addressing whether the orders render this appeal moot—that is, whether the juvenile court's termination of jurisdiction makes it " ' "impossible for [a reviewing] court, if it should decide the case in favor of plaintiff, to grant him [or her] any effect[ive] relief." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).)  Mother argues that her appeal is not moot because the court sustained allegations that are reportable for inclusion in the CACI.  DCFS did not address this issue.

Agencies such as DCFS are required to forward reports of child abuse to the California Department of Justice for inclusion in the CACI.  (Pen. Code, §§ 11169, subd. (a), 11165.9.) "Inclusion in the CACI carries several consequences for parents." (*D.P.*, *supra*, 14 Cal.5th at p. 279.)  Reportable child abuse "includes physical injury or death inflicted by other than accidental means upon a child by another person" and "the willful harming or injuring of a child."  (Pen. Code, § 11165.6.)  Here, mother challenges the juvenile court's findings that mother physically abused two of her children and gave one child a black eye.  We assume without deciding that at least some of mother's conduct fits the definition of reportable child abuse.  Because "Mother's conduct is reportable, and there has been no representation by the Department that the report has not been and will not be forwarded to the DOJ," the appeal is not moot insofar as it challenges findings that are necessarily reportable. (*In re S.R.* (2025) 18 Cal.5th 1042, 1054 (*S.R.*).)

Mother also challenges the juvenile court's findings that are less clearly reportable.  For example, mother challenges the court's finding that two of her other children were at risk of serious physical harm or abuse based on mother's abuse of their

siblings. Rather than attempting to determine which of mother's arguments challenge reportable conduct, we will exercise our discretion to consider all of mother's arguments on appeal. (*S.R.*, *supra*, 18 Cal.5th at p. 1054 ["we emphasize that appellate courts have discretion to conduct a merits review of the parent's claim even if the case is moot"].)

## II. The juvenile court properly exercised jurisdiction over mother's four children

On the merits, mother argues that the juvenile court erroneously sustained jurisdictional allegations that the children were at substantial risk of suffering serious physical harm. For the following reasons, we disagree and affirm.

### A. *Applicable law and standard of review*

The juvenile court may assume dependency jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (§ 300, subd. (a).) The court may also exercise jurisdiction after finding "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] (A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child." (*Id.*, subd. (b)(1)(A).) In addition, the court may assume jurisdiction if it determines that "[t]he child's sibling has been abused or neglected, as defined in subdivision (a) . . . and there is a substantial risk that the child will be abused or neglected" as defined in that subdivision. (*Id.*, subd. (j).)

"For purposes of [section 300, subdivision (a)], a court may find there is a substantial risk of serious future injury based on

6

the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm." (§ 300, subd. (a).) However, " ' "a parent has a right to reasonably discipline his or her child and may administer reasonable punishment . . . ." ' " (*In re D.M.* (2015) 242 Cal.App.4th 634, 640–641 (*D.M.*).)

We review jurisdictional findings " ' "in the light of the *whole record*" ' 'to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value . . . .' " (*In re I.C.* (2018) 4 Cal.5th 869, 892.) " 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633 (*R.T.*).) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

### B. *Substantial evidence supports the juvenile court's jurisdictional findings*

Mother argues that the evidence is insufficient to support a finding that S.D. suffered serious physical harm that was inflicted nonaccidentally. We disagree. As mother acknowledges, there is no dispute that mother struck S.D. and gave her a black eye, which is a serious injury. (Cf. *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438 [punishment causing "deep, purple bruises" sufficient to support a finding of serious physical harm].) As to

7

whether mother's conduct was nonaccidental, S.D. told school staff that mother hit her, and later reported to DCFS that mother gave her the black eye after S.D. criticized mother's relationship with J.R.'s father. While this description is somewhat ambiguous, it suggests that mother struck J.R. in retaliation for this criticism. We must " 'draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*R.T.*, *supra*, 3 Cal.5th at p. 633.) S.D.'s descriptions of the incident are sufficient to support a finding that mother struck S.D. nonaccidentally.

Mother also contends that there is insubstantial evidence to support a finding that J.D. suffered, or was likely to suffer, serious physical harm. We again disagree. J.D. reported that mother threatened to hit her and kill her after finding her watching television; hit her with a fist on the head, back, and arm; grabbed her hair; and pushed her to the floor. J.D. was so frightened that she left the home and went to a neighbor's house. According to J.D., mother also threatened to kill her at least five times previously. And J.D. reported that during an earlier incident, mother hit her in the face, and when J.D. retreated, mother followed her and hit her again. Although J.D. later denied that mother had ever hit her, the court credited the child's earlier statements. It reasoned that J.D. may have changed her story because the family "targeted" her, and it noted that J.D. provided "too many specific facts" about being hit to ignore her initial report. We defer to this credibility finding. (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1102.) And although E.D. and mother

8

denied that mother had hit J.D., the child's statements, which the juvenile court expressly credited, are sufficient to support its jurisdictional findings. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["Evidence from a single witness, even a party, can be sufficient to support the trial court's findings."].)

Mother observes that there is no direct evidence in the record establishing whether or how severely J.D. was hurt, and therefore she contends there is insufficient evidence that the child suffered a serious physical injury. But there is evidence that J.D. fled the home after one incident, which could support a finding that her injuries were serious. Moreover, a court may exercise dependency jurisdiction by finding "a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm." (§ 300, subd. (a).) Even assuming that J.D.'s injuries were minimal, mother's history of striking J.D. and threatening to kill her support a finding that J.D. faced a substantial risk of future harm, sufficient to warrant jurisdiction.

Mother appears to also argue that her conduct qualified as appropriate physical discipline, and therefore was not physical abuse. (*D.M.*, *supra*, 242 Cal.App.4th at p. 640 [section 300 does not " 'prohibit the use of reasonable methods of parental discipline' "].) Mother forfeited this claim by failing to raise it below. (*In re D.P.* (2023) 92 Cal.App.5th 1282, 1292 ["In dependency proceedings, as elsewhere, a litigant forfeits an appellate argument by failing to raise it before the trial court."].) Moreover, "a successful assertion of the parental disciplinary

9

privilege requires three elements: (1) a genuine disciplinary motive; (2) a reasonable occasion for discipline; and (3) a disciplinary measure reasonable in kind and degree." (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 91.) Mother has not provided any "reasoned argument and citations to authority" to establish that her conduct falls within the privilege, meaning she forfeited this point. (*In re A.C.* (2017) 13 Cal.App.5th 661, 672.)

Next, mother contends that there is insufficient evidence to support a finding that mother's treatment of J.D. and S.D. established that there was a substantial risk of harm to their siblings, C.I. and J.R. Mother specifically argues that the juvenile court erred by reasoning that these younger children were endangered because they may one day challenge mother's authority, and mother may become frustrated and hit them. Mother argues that this reasoning is faulty because it is speculative. However, in assessing risk of future harm, the juvenile court may consider past events, because "[a] parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) Here, the evidence reflected that mother gave S.D. a black eye after the child criticized her relationship with a man, and struck J.D. after becoming upset because the child was watching cartoon pornography. This evidence supports a finding that mother might behave similarly in the future.

Finally, although mother's opening brief purports to appeal from the juvenile court's dispositional orders, she raises no argument specifically addressing those orders. We presume mother means to argue that the dispositional orders should be reversed on the same basis as the jurisdictional findings.

10

Because we affirm the jurisdictional findings, we also affirm the dispositional orders.

## DISPOSITION

The juvenile court orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EDMON, P. J.

ADAMS, J.